RECORD NO. 14-1488

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

RFT MANAGEMENT COMPANY LLC,

*Plaintiff-Appellant,*

v.

JOHN D. POWELL; PROFESSIONAL APPRAISAL SERVICE INCORPORATED; TINSLEY & ADAMS LLP; WELBORN D. ADAMS,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT ANDERSON
(THE HONORABLE MARY G. LEWIS, U.S.D.J.)

## OPENING BRIEF OF APPELLANT

Harry A. Swagart, III
HARRY A. SWAGART, III, P.C.
P.O. Box 7787
Columbia, South Carolina 29202
(803) 779-0770 Tel.
(803) 779-0771 Fax
harry@harryswagart.com

*Counsel for Plaintiff-Appellant*
*RFT Management Company, LLC*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____        Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                                YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?          YES      NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                              YES      NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

# CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
(signature)                                                (date)

- 2 -

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ...................................................................iv

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF ISSUES ......................................................................2

STATEMENT OF THE CASE..................................................................3

    A.    Statement of Facts..................................................................3

    B.    Procedural Background........................................................11

    C.    Rulings Presented for Review..............................................13

SUMMARY OF ARGUMENT ...............................................................13

ARGUMENT ..........................................................................................17

I.      RFT WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE UTPA CAUSE OF ACTION AGAINST APPRAISERS .............17

II.    RFT IS ENTITLED TO A NEW TRIAL ON THE PROFESSIONAL NEGLIGENCE AND UTPA CAUSES OF ACTION ................................21

    A.    Prejudicial Evidentiary Rulings .........................................21

          (1)   The District Court Erred by Excluding Appraisals of Lots 14 and 41 ......................................................................22

          (2)   The Court Erred by Refusing to Allow RFT to Question Appraisers Regarding Compliance with USPAP ....................23

          (3)   The Court Erred by Admitting Testimony of Respondent Adams ......................................................................25

i

B.      Errors in the District Court's Charge to the Jury ...............................28

     (1)     The District Court Erred by Refusing to Charge RFT's Supplemental Request to Charge No. 17 ...................................28

     (2)     The District Court's Charges Mistated the Law Regarding RFT's UTPA Cause of Action...................................30

     (3)     The District Court Erred by Giving a Charge on Comparative Negligence...........................................32

III.    THE DISTRICT COURT ERRED BY DISMISSING RFT'S CIVIL CONSPIRACY, SCUSA, AND UTPA CLAIMS AGAINST T&A AND IN DISMISSING ILSFDA AND FEDERAL SECURITIES CLAIMS AGAINST APPRAISERS AND T&A ........................................33

A.      Relevant Allegations of the Complaint ................................33

B.      The District Court Erred in Dismissing the SCUSA, UTPA, and Civil Conspiracy Claims against T&A ...............................36

     (1)     Violation of SCUSA .....................................................37

     (2)     Violation of the UTPA..................................................39

     (3)     Civil Conspiracy .........................................................39

C.      The Complaint States Claims under ILSFDA and under Federal Securities Law .........................................................40

     (1)     The District Court Erred in Dismissing RFT's Federal Securities Claims......................................................41

     (2)     The District Court Erred by Dismissing The ILSFDA Claim against T&A ...................................................44

D.      The District Court Should Have Granted RFT's Motion to Amend the Complaint .......................................................46

CONCLUSION ....................................................................49

REQUEST FOR ORAL ARGUMENT ....................................................................50

CERTIFICATE OF COMPLIANCE.......................................................................51

CERTIFICATE OF SERVICE ................................................................................52

ADDENDUM ........................................................................................................53

# TABLE OF AUTHORITIES

## CASES

Page

*Aden v. Fortsh*,
    776 A.2d 729 (N.J. 2001) ..........................................................32, 33

*Austin v. Stokes-Craven Holding Corp.*,
    387 S.C. 22, 691 S.E.2d 135 (2010) ................................................17

*In re Barbare*,
    360 S.C. 560, 602 S.E.2d 382 (2004) ..........................................35, 36

*Barnes v. Jones Chevrolet Co., Inc.*,
    292 S.C. 607, 358 S.E.2d 156 (1987) ..........................................22, 31

*Bessinger v. Food Lion, Inc.*,
    305 F. Supp. 2d 574 (D.S.C. 2003) ..................................................31

*Board of Trustees, etc. v. Cooper & Lybrand*,
    208 Ill. 2d 259, 803 N.E.2d 460 (Ill. 2003) ......................................33

*Buckley v. Mukasey*,
    538 F.3d 306 (4th Cir. 2008) ....................................................21, 28

*C.F. v. Capistrano Unified School District*,
    656 F. Supp. 2d 1190 (C.D.Cal. 2009) ..............................................48

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994).......................................................................44

*Eastern Shore Markets, Incorporated v. J.D. Associate Lim. Partnership*,
    213 F.3d 175 (4th Cir. 2000) ..........................................................42

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) ..........................................................43

*Ethox Chemical, LLC v. Coca-Cola Co.*,
    2013 WL 41001 (D.S.C. 2013).........................................................31

iv

*In re Faysoux*,
381 S.C. 637, 675 S.E.2d 428 (2009) ............................................................35

*Foreman v. Martin*,
325 N.E.2d 378 (Ill. Ct. App. 2d Dist. 1st Div. 1975)....................................40

*Gander v. Mr. Steak of Sun Ray, Ins.*,
774 F.2d 920 (8th Cir. 1985) ..........................................................................29

*Harrison Beverage, Co. v. Dribeck Importers, Inc.*,
133 F.R.D. 463 (D.N.J. 1990) .........................................................................48

*Inge v. Rock Finance Corp.*,
281 F.3d 613 (6th Cir. 2002) ...........................................................47, 48, 49

*Jacob's Press Incorporated v. The Hartford Steam Boiler Inspec. & Inc. Co.*, 1997 WL. 90665 (4th Cir. 1997) ...........................................................29

*In re Johnson*,
375 S.C. 409, 654 S.E.2d 272 (2007) ............................................................36

*In re Latham*,
360 S.C. 326, 600 S.E.2d 902 (2004) ............................................................36

*McLister v. Epstein & Laurence, P.C.*,
934 P.2d 844 (Colo. App. 1996).....................................................................33

*In re Milk Products Antitrust Litigation*,
195 F.3d 430 (8th Cir. 1999) ..........................................................................48

*Morrow v. Keystone Builders, Inc.*,
2010 WL 2672354 (D.S.C. 2010)..............................................................47, 48

*Newman v. McNeil Consumer Healthcare*,
2013 WL 4460011 (N.D.Ill. 2013) .................................................................26

*Parker v. Columbia Picture Industrial*,
204 F.3d 326 (2d Cir. 2000) ...........................................................................47

*Platt v. Justin Enterprises*,
    374 S.C. 504, 649 S.E.2d 92 (Ct.App. 2007) ...................................................40

*RFT Management Co., L.L.C. v. Tinsley & Adams, L.L.P.*,
    399 S.C. 322, 732 S.E.2d 166 (2012) ......................................................37, 38

*Ragin v. Newburgh Enlarged City School District*,
    2011 WL 2183175 (S.D.N.Y. 2011) .............................................................26

*Schatz v. Rosenberg*,
    943 F.2d 485 (4th Cir. 1991) ................................................................44, 45

*Scioto Mem. Hospital Association v. Price Waterhouse*,
    659 N.E.2d 1268 (Ohio 1996) ......................................................................33

*State ex rel McLeod v. C&L Corp.*,
    280 S.C. 519, 313 S.E.2d 334 (Ct.App. 1984) ...............................................30

*Steiner Corp. v. Johnson & Higgins*,
    996 P.2d 531 (Utah 2000).............................................................................33

*Taylor v. Va. Union University*,
    193 F.3d 219 (4th Cir. 1999) ........................................................................21

*Teachers Retirement System of LA v. Hanter*,
    477 F.3d 162 (4th Cir. 2007) ........................................................................43

*Thompson v. Paul*,
    547 F.3d 1055 (9th Cir. 2008) ......................................................................44

*United States v. Allen*,
    210 WL 125467 (11th Cir. 2011) ..................................................................36

*United States v. Behenna*,
    1995 WL 3731 (1st Cir. 1995)........................................................................36

*United v. Gimsell*,
    2007 WL 2032927 (E.D.Pa. 2007) ................................................................36

*United States v. Gisham*,
　146 F.3d 6 (1st Cir. 1998) ...............................................................36

*United States v. Henry*,
　673 F.3d 285 (4th Cir. 2012) ...........................................................21

*United States v. Medford*,
　661 F.3d 746 (4th Cir. 2011) ...........................................................21

*United States v. U.S. Training Center, Inc.*,
　2012 WL 6052051 (4th Cir.2012) ...................................................21

*Wright v. Craft*,
　372 S.C. 1, 640 S.E.2d 486 (Ct.App. 2007) ...............................18, 22

*Young v. Century Lincoln-Mercury, Inc.*,
　302 S.C. 320, 396 S.E.2d 105 (Ct.App.1990) .................................17

## STATUTES AND REGULATIONS

15 U.S.C. § 78j (2010) .................................................1, 3, 41, 42, 50
15 U.S.C. § 1703 (1979) ...........................................................1, 3
28 U.S.C. § 1291 (1982) ...................................................................1
28 U.S.C. § 1331 (1980) ...................................................................1
28 U.S.C. § 1332(a)(1) (2005) ..........................................................1

17 C.F.R. § 240.10b-5.................................................1, 3, 41, 42, 50

S.C. Code Ann. § 35-1-509 (Cum.Supp.2013).....................................2
S.C. Code Ann. § 35-1-509(g)(5) South Carolina Uniform Securities Act
　("SCUSA") .................................................................................37
S.C. Code Ann. § 39-5-20(a) (1985) South Carolina Unfair Trade Practices
　Act ("UTPA").........................................................................2, 20
S.C. Code Ann. § 39-5-140(a) (1985) ................................................20
S.C. Code Ann. § 40-60-38 (2011) .................................................8, 28

# RULES

Fed.R.Civ.P. 12(b)(6)................................................... 11, 13, 41, 42, 46, 47
Fed.R.Civ.P. 16(b) ...................................................................47
Fed.R.Civ.P. 51(b)(2)................................................................29
Fed.R.Evid. 403 .......................................................................27

# OTHER AUTHORITIES

Advisory Committee's note to the 1991 Amendment to Fed.R.Civ.P. 50(b) .........19

## JURISDICTIONAL STATEMENT

(A)    The district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1)(2005) over the entire case due to the facts that plaintiff  RFT Management Company, LLC ("RFT") was an Arizona LLC residing in Arizona; that all of the Defendants resided in South Carolina; and that the amount in controversy was in excess of $75,000.00, exclusive of interest and costs.  The district court also possessed federal question jurisdiction under 28 U.S.C. § 1331 (1980) based upon RFT's claims for violations of the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1703 (1979) and 15 U.S.C. § 78j (2010) and 17 C.F.R. § 240.10b-5 ("federal securities claim").

(B)    The United States Court of Appeals for the Fourth Circuit has jurisdiction pursuant to 28 U.S.C. § 1291 (1982) in that the district court entered final judgment in this case on September 13, 2013.

(C)    RFT's Motion for Judgment as a Matter of Law ("JAML") and a New Trial were denied on April 23, 2014, and RFT filed its Notice of Appeal on May 21, 2014.

(D)    This appeal is from a final order or judgment that disposes of all of RFT's claims.

1

## STATEMENT OF ISSUES

I.    Was RFT entitled to judgment as a matter of law on its claim for violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20(a)(1985) ("UTPA")  based upon undisputed evidence introduced at trial?

II.   Was RFT entitled to a new trial on its professional negligence and UTPA claims as a result of errors made by the District Court in admitting and excluding evidence at trial?

III.  Was RFT entitled to a new trial on the professional negligence and UTPA claims because of the District Court's refusal to charge RFT's Supplemental Request to Charge No. 17?

IV.   Was RFT entitled to a new trial on the UTPA cause of action because of errors made by the District Court in its charge?

V.    Did the District Court err by charging the jury on comparative negligence when comparative negligence was not available as a defense to the negligence and UTPA claims; when the charge was suggestive and misleading due to its length; and when the charge did not properly advise the jury as to its inapplicability to the UTPA claim?

VI.   Did the District Court err by dismissing RFT's claims under the UTPA, the South Carolina Uniform Securities Act, S.C. Code Ann. § 35-1-509 (Cum.Supp. 2013) ("SCUSA"), and for civil conspiracy based upon res

2

judicata purportedly arising from a state trial court's decision in an earlier lawsuit?

VII.  Did the District Court err by dismissing the Complaint on the ground that it did not state sufficient facts to allege a claim for violations of 15 U.S.C. § 78j (2010) and 17 C.F.R. § 240.10b-5 upon which relief may be granted?

VIII. Did the District Court err by dismissing the Complaint on the ground that it did not state sufficient facts to allege a claim under ILSFDA, 15 U.S.C. § 1703, upon which relief may be granted?

IX.   Did the District Court err by denying RFT's Motion to Amend the Complaint because of the expiration of the deadline for filing motions to amend specified in the court's scheduling order?

## STATEMENT OF THE CASE

### A.    Statement of Facts.

In the fall of 2007 RFT entered into contracts to purchase Lots 28 and 31 in Planters Row Subdivision on Lake Greenwood near Greenwood, South Carolina. Contracts, Trial Exhibit Nos. 1,2; JA 431, 437.  The seller of the lots and developer of the subdivision was Lake Greenwood Developers, LLC ("LGD"). *Id.* The purchase price of Lot 28 was $290,000.00, and the price of Lot 31 was $280,000.00.  The Addendum to the purchase contracts contained, among other features, a buy-back provision which permitted RFT to elect to require LGD to

3

repurchase the lots for $700,000.00 after two years. Buy-back Agreement, Trial Exhibit No. 3, p.1; JA 443. Most importantly, closing of the purchase contract was expressly made contingent upon each lot appraising at a fair market value at or above its purchase price. Trial Exhibit No. 1, ¶ 25, No. 2, ¶ 25; JA 434, 440. Needless to say, neither RFT nor any other rational purchaser would have invested $570,000.00 in the two lots without proper appraisals.

The Appraisers were commissioned to perform the appraisals by an agent of LGD. Powell, Transcript p.127, lines 7-19; JA 225. Prior to performing the appraisals, LGD informed Appraisers of the purchase prices for each which are reflected on the appraisals. Trial Exhibit Nos. 6, 7; JA 452, 462. On or about October 10, 2007, Appraisers issued summary appraisals which, not surprisingly, valued Lot 28 at its exact purchase price of $290,000.00[1] and valued Lot 31 at $285,000.00, which was only $5,000.00 over its purchase price of $280,000.00. *Id*.

Appraisers made a number of representations in the appraisals which were misleading, if not patently false. Thus, they represented that the properties chosen as comparables were the most similar and the most proximate to Lots 28 and 31, JA 453, 463, when three of them, Lot Nos. 41, 44, 46, were not located close to the

---

[1] When asked whether it was a mere coincidence that the appraised value of Lot 28 came out to be exactly the same as the purchase price, Powell responded: "No." Tr. p. 182, lines 7-15; JA 266.

4

subject lots, were the most expensive lots in Planters Row, and had far superior water views. Subdivision Plat, Trial Exhibit No. 5; JA 451; Powell Testimony, p. 152, line 5 to p. 154, line 8; JA 250. This representation was made despite the fact that Appraisers did not use as comparables Lot 27 which was located next to Lot 28 or Lots 29 and 30 which were next to Lot 31.[2] Appraisals, Trial Exhibit Nos. 6, 7; JA 453, 463. Appraisers also misleadingly represented that the comparables had "similar views and appeal" to those of the subject lots. *Id*. A cursory inspection of the Planters Row subdivision plat shows that the comparables had dissimilar views, were not near the subject lots, and were far more appealing due to their location on open water. Trial Exhibit No. 5; JA 451.

In the "Neighborhood" section of the appraisals, Appraisers made a number of representations about the "neighborhood" under consideration without giving RFT or any other reader of the reports any reason to believe that the "Neighborhood" being described was any area other than Planters Row. *See* Trial

---

[2] Powell stated that he did not use Lots 27, 29, or 30 as comparables because three of the four lots which he did use had been valued within 12 months of his appraisals of Lots 28 and 31, while the three far closer and similar lots (Nos. 27, 29, and 30) had been appraised 18 months earlier. Transcript p. 152, line 5 to p. 153, line 19; JA 250-251. This testimony conflicts with his testimony that 18-month-old appraisals were suitable for use and by the fact thats in 2010, he appraised Lot 29 (next door to Lot 28), did not use as comparables the expensive on-water lots, and used older appraisals of less expensive lots. Transcript p. 210, line 11 to p. 212, line 15; JA 277-279. Indeed, he did use Lot 26 as a comparable in appraising Lots 28 and 31 although it was last appraised 18 months earlier. E.g. Trial Exhibit Nos. 6, 7; JA 454, 464.

Exhibit Nos. 6, 7; JA 453, 463.    Indeed, during his deposition, Powell admitted that the "Neighborhood" referred to in the appraisal reports was in fact Planters Row.    Transcript p. 138, lines 17-19; JA 236. Were it to have referred to some geographic area larger or different than Planters Row, the word "Neighborhood" as used in the reports, was indisputably misleading.    RFT had no notice that the appraisals did not describe just the Planters Row "neighborhood," with respect to growth rate, stability of property values, balance of demand and supply, marketing time, price range, and predominate value.    Roatch Testimony, Transcript p. 90, line 20 to p. 91, line 11; JA 193-94.    Thus, the only possible conclusions from the appraisals were that the Planters Row "Neighborhood" was experiencing a *steady* growth rate, *stable* property values, with demand and supply *in balance*, a marketing time of *four to six months*, and with lots *ranging in price* between $250,000.00 and $750,000.00 and having a *predominate value* of $500,000.00. Trial Exhibit Nos. 6, 7; JA 453, 463.

At trial, Powell attempted to recant his deposition testimony and claim that the word "Neighborhood" referred to the overall Lake Greenwood area, despite the fact that the whole Lake Greenwood area is not a "neighborhood."    Transcript p. 139, lines 2-11, JA 237.    Even assuming the truth of his trial testimony, Powell admitted that there was nothing in either of the reports which would have alerted RFT to that fact.    Transcript p. 139, lines 16-18; JA 237. That admission is crucial

6

because uncontradicted trial evidence established that application of Powell's market characteristics to Planters Row necessarily created a false and misleadingly rosy description of market conditions in Planters Row. In reality, instead of having a steady growth rate, only one lot had been sold in Planters Row between May 2006 and October 31, 2007; and during that time there had not been a single resale in the subdivision. Trial Exhibit No. 13; JA 472; Gilbert Testimony, Transcript p. 104, lines 16-25; JA 204. Lots did not have stable values, but instead, prior to May 2006, had to be deeply discounted and accompanied by special financing and buy-back agreements. Trial Exhibit Nos. 16, 17; JA 475, 491; Gilbert Testimony, p. 107, line 4 to p. 108, line 13; JA 207-208. Rather than supply and demand being balanced, there was a plethora of lots that were unsold from May 2006 through October 30, 2007; and there was virtually no demand for lots in Planters Row as evidenced by the absence of sales. Rather than a price range of $250,000.00 to $750,000.00 for Planters Row lots, the actual price range was from $114,800.00 to $350,000.00. Trial Exhibit No. 13; JA 472. Finally, the predominate value for lots in Planters Row could not possibly have been anything close to $500,000.00, given that only a few lots had sold for $250,000.00 or more; that the vast majority sold for less than $250,000.00; and that none sold for more than $350,000.00. *Id.* Additionally, the appraisals could only have been read as showing that on the date of appraisal, the seller was LGD, despite the fact that LGD had not yet repurchased

the lots from the prior owners.[3]  Trial Exhibit Nos. 6, 7; JA 453, 463.  They also

stated that Lots 28 and 31 had not been sold in the prior three years (Trial Exhibit

Nos. 6, 7; JA 451, 461) when, in fact, they had been sold by LGD less than 18

months earlier.  Trial Exhibit No. 13; JA 472.

Perhaps the most egregious misrepresentation contained in the appraisals

was Appraisers' certification in the appraisals that they had been performed in

compliance with the Uniform Standards of Professional Appraisal Practice

("USPAP"), (Trial Exhibit No. 19; JA 507) to which all appraisers in South

Carolina were made subject by S.C. Code Ann. § 40-60-38.[4]  Contrary to their

certification, Appraisers violated USPAP in numerous ways. They failed to

communicate with the Seller, LGD, regarding the sales histories and particulars of

the lots, (*see* USPAP p. 13, lines 419-20; JA 521).  Powell Testimony p. 127, line 7

to p. 129, line 10; JA 225-27  An estimate of exposure time was not made using

statistical information regarding days on the market, information gathered through

sales verification, or interviews of market participants, as required by USPAP

Standard No. 6, p. 90, lines 2907-14; JA 531.  *Id.* p. 143, line 24 to p. 147, line 14;

---

[3] This inconsistency results from the fact that, as alleged in the Complaint, LGD
and T&A were in the process of orchestrating a "flip transaction" pursuant to
which LGD would use RFT's purchase money to buy Lots 28 and 31 back from
their owners to be resold to RFT.  (Complaint ¶ 44; JA 17.)  See discussion at p. 45
infra.

[4] For the text of § 40-60-38 see n. 10 infra.

JA 241-45.  The appraisals were based upon unsupported assumptions or premises about market area trends, in violation of USPAP, Comment to Standard Rule 1-3(a) p. 20, lines 602-603; JA 528.  Powell Testimony, p. 138, line 13 to p. 147, line 14; JA 235-45.   Appraisers made no attempt to determine whether there were any sales concessions, special financing terms, and discounts involved in the sales of Lots 28 and 31 or of the comparables or whether such things affected the fair market values of the lots as required by USPAP Standard 1-2(c)(iv), p. 18, lines 546-49; JA 526, primarily because they did not know how to reflect the effects of those factors in determining actual lot values.  Powell Testimony, p. 127, lines 3-6; p. 131, line 23 to p. 134, line 24; JA 225, 229-32.   Additionally, Appraisers failed to choose appropriate comparables (*id.* p. 152, line 5 to p. 156, line 19; JA 250-54) and to disclose the sales histories of the comparables which were chosen.  *Id.* p. 136, lines 11-15; JA 234.  They made no attempt to analyze the contracts of sale of the lots (*Id.* p. 128, line 22 to p. 131, line 12, JA 226-29), as required by USPAP Standard Rule 1-5(a)(b), p. 21, lines 651-56; JA 529, nor did they analyze all sales of Lots 28 and 31 which had taken place during the three years preceding the dates of the appraisals.  *Id.* p. 130, line 22 to p. 131, line 12; JA 228-29; *see* Standard Rule 1-5(a), (b), JA 529.   Last, Appraisers had no reasonable basis for the assumption that the amenities would be completed.  *Id.* p. 148, line 21 to p. 152, line 4; JA 246-50; *see* USPAP Standard Rule 1-2(f), p. 19, lines 578-80; JA 527.

9

The net effect of Appraisers' misrepresentations and misleading statements was to portray Planters Row to RFT as a healthy, vibrant, upscale, successful subdivision, when just the opposite was the case. Moreover, the appraisals expressly assured RFT that they had been prepared in strict compliance with rules which governed the appraisal profession.

Evidence on the record establishes that Appraisers' foregoing deceptive and misleading acts and practices were performed twice, once each in connection with appraisals of Lots 28 and 31. In addition, RFT proffered evidence of virtually identical conduct which occurred in connection with the appraisals of two other lots (Nos. 14, 41) for two other purchasers. Proffer of Trial Exhibit Nos. 8, 10 (for i.d. only), p. 210, line 11 to p. 212, line 15; JA 277-79. That evidence was erroneously excluded by the district court. *Id.* Finally, inflated appraisals very often result in artificially inflated purchase prices, which are in turn reflected on affidavits of true consideration which accompany deeds. *See, e.g.*, Trial Exhibit No. 4 at p. 3; JA 449. Those affidavits are then relied upon by later appraisers thereby continuing the cycle of inflated property values.[5] As a result, the purchasing public very often may pay more than actual fair market value for real estate, and the cost of deed stamps becomes artificially inflated.

---

[5] As reflected by the appraisals of Lots 28 and 31, Powell obtained the values of the comparables from the deed affidavits. *See* Trial Exhibit Nos. 6, 7; JA 453, 463 (identifying "data source" as "county records").

In reliance on the appraisals, RFT paid $570,000.00 for Lots 28 and 31. Roatch Testimony, p. 55, lines 5-20; JA 159.  In addition, the parties stipulated that the current value of the two lots as of the date of trial was $32,500.00 (Transcript p. 392, lines 11-14; JA 393), resulting in actual damage to RFT in the amount of $537,500.00.

**B.      Procedural Background.**

On September 24, 2010, RFT filed this case against T&A and Appraisers (and others who are no longer parties) in the United States District Court for the District of South Carolina.  Complaint; JA 7.  T&A then moved under Fed.R.Civ.P. 12(b)(6) to dismiss the ILSFDA, SCUSA, UTPA, and civil conspiracy claims on the ground that they were barred by *res judicata* and to dismiss the Rule 10b-5 claim based upon collateral estoppel.  Motion to Dismiss dated November 12, 2010; JA 48.

On May 24, 2011, the district court issued an order in which it dismissed the UTPA, SCUSA, and conspiracy causes of action based upon *res judicata* (Order at 4-10; JA 56-62) and allowed T&A leave to re-file the motion to dismiss based upon an issue raised for the time by the Court as to whether the federal securities claim stated a cognizable cause of action.  *Id.* at 11; JA 63.  T&A then filed its second motion to dismiss that claim and the ILSFDA claim.  Motion dated May 27, 2011; JA 65.  Plaintiff moved the district court for leave to amend its complaint

11

in order to cure the alleged pleading deficiencies in the Rule 10(b)(5) claim. Motion dated June 1, 2011; JA 69. On June 17, 2011, Respondents Powell and Professional Appraisal Service, Inc., ("Appraisers") also moved the court to dismiss the ILSFDA and federal securities causes of action. Motion dated June 17, 2011; JA 94.

On January 26, 2012, the district court granted the motion to dismiss the ILSFDA and federal securities claims as they applied to T&A and Appraisers (JA 96); and denied RFT's motion to amend because it was filed after a deadline specified in the Second Amended Conference and Scheduling Order (JA 50). On October 4, 2012, RFT moved the district court to reconsider its order of May 24, 2011, dismissing the SCUSA, UTPA, and civil conspiracy claims against T&A, JA 107. That motion was denied by Order dated December 11, 2012. JA 120.

The negligence, fraud, and UTPA claims against the Appraisers were tried to a jury in the district court on September 9-11, 2013; and a verdict was entered against RFT on September 11, 2013. JA 554. Final judgment was entered on the verdict on September 13, 2013. JA 557. RFT's Renewed Motions for Judgment as a Matter of Law and for a New Trial were filed on October 10, 2013. JA 558. RFT did not challenge the verdict against it on the common law fraud claim. The district court denied RFT's post-trial motions by Order dated April 23, 2014. JA 574. RFT timely filed its Notice of Appeal on May 21, 2014. JA 584.

12

**C.**    <u>**Rulings Presented for Review.**</u>

RFT respectfully requests the Court to review the following rulings by the district court:

1.  denial of RFT's Motion for Judgment as a Matter of Law on its UTPA cause of action;

2.  denial of RFT's Motion for a New Trial on the UTPA and professional negligence claims;

3.  dismissal of RFT's UTPA, SCUSA, and conspiracy claims on the basis of *res judicata*;

4.  dismissal of RFT's federal securities and ILSFDA claims pursuant to Fed.R.Civ.P. 12(b)(6); and

5.  denial of RFT's motion to amend the federal securities cause of action in order to cure pleading deficiencies identified by the Court.

## SUMMARY OF ARGUMENT

RFT argues below that the trial judge erred in denying its motion for JAML on the UTPA claim and in denying its motion for a new trial on the UTPA and professional negligence causes of action.  Regarding the JAML motion, RFT will show that the record contained undisputed evidence establishing every element of a UTPA cause of action, together with resulting damages.  In its order, the trial judge did not attempt to refute any of RFT's contentions regarding evidence in the

13

record, but simply concluded without explanation that there was a legally sufficient basis for the verdict and that the jury weighed and considered all of the evidence. RFT will argue that these grounds were not insufficient to support denial of its motion.

RFT seeks reversal of the district court's denial of its Motion for a New Trial because errors made by the district court in admitting and excluding evidence and in charging the jury severely restricted RFT's ability to properly present its theory of the case to the jury and very possibly caused the jury to decide the case on an improper legal basis. The district court improperly excluded evidence which was extremely relevant and competent as proof of the "affect on the public interest" element of a UTPA claim. Moreover, the court's restrictions on RFT's ability to question Respondent Powell as to whether his conduct violated USPAP limited RFT's ability to establish Appraisers' standards of care and violations of those standards. RFT contends that it was prejudiced by the district court's admission of the testimony of Welborn D. Adams, virtually all of which was irrelevant, likely to confuse the jury, and likely to bias the jury against RFT.

The most glaring error in the charge was the district court's decision not to charge RFT's Supplemental Request to Charge No. 17 which explained the legal relationship of USPAP to this case, set forth USPAP standards with which appraisers in South Carolina were expected to comply, and explained that non-

compliance with USPAP would violate an appraiser's standard of care. RFT will also argue that the district court's charge on the UTPA was legally incorrect because it instructed that an act could not be considered a deceptive act unless it had an impact on the marketplace; that it instructed that an act could not violate the UTPA unless it had an *actual* effect on some person other than RFT, when a *potential* effect would suffice under clear South Carolina case law; that it failed to inform the jury that even a statement that was literally true could be deceptive and that intent to deceive was not necessary to proof of a violation of the UTPA. The last error in the charge was the charge on comparative negligence which RFT contends was inapplicable to a professional negligence claim and which, in any event, was far too suggestive because of its inordinate length and the continual repetition of various principles.

RFT will argue next that the district court erred by dismissing its cause of action under SCUSA based upon *res judicata* arising from an earlier state court case. The sole ground for dismissal of the SCUSA cause of action in state court was that no security was involved in the sale of lots to RFT. This ruling was considered but not affirmed by the South Carolina Supreme Court on appeal, and, thus, would not support application of *res judicata* based on the state trial court's order.

15

RFT also contends that the district court erred in dismissing the UTPA claim against T&A. The trial court order on which the district court relied dismissed the UTPA claim on the sole ground that the UTPA did not apply to the legal profession. That holding was reversed by the South Carolina Supreme Court, thereby mooting the district court's only ground for application of *res judicata* to that claim.

RFT next argues that dismissal of the civil conspiracy claim should be reversed. The district court used an incorrect standard in applying *res judicata*. Because the district court did not identify issues actually raised and decided in the state case and then failed to explain how such issues would require dismissal of the civil conspiracy claim in this case, the dismissal of the civil conspiracy claim should be reversed.

The district court erred in dismissing RFT's federal securities claim on the ground that the Complaint could only be read as asserting aider and abettor liability. RFT will show that the Complaint contained sufficient factual allegations to permit a reasonable inference that T&A and the Appraisers were primary participants in the fraudulent scheme. Alternatively, RFT contends that the district court erred in denying it an opportunity to amend the Complaint in order to cure any pleading deficiencies in the federal securities claim.

Finally, RFT will show that the district court erred in dismissing RFT's ILSFDA claim against T&A because the Complaint contained sufficient allegations to establish that T&A was an agent of the developer and a direct participant in the sale of Lots 28 and 31.

## ARGUMENT

## I.    RFT WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE UTPA CAUSE OF ACTION AGAINST APPRAISERS._____

In its Memorandum in Support of its Motion for JAML on the UTPA claims. RFT meticulously explained how the trial evidence established every required element of the UTPA cause of action.[6]

First, as discussed in detail in the above Statement of Facts, the appraisals were misleading and had the clear capacity to deceive.  That was all that was needed because, under the UTPA, "there is no need to show that a certain representation was intended to deceive, but only that it had the capacity, effect, or tendency to deceive." *Young v. Century Lincoln-Mercury, Inc.*, 302 S.C. 320, 326, 396 S.E.2d 105, 108 (Ct.App.1990).  Preparing misleading appraisal reports which convey the false impression that lots are located in a healthy, vibrant, successful subdivision, when in fact Planters Row had seen virtually no sales for over a year,

---

[6] RFT was required to prove (1) that Appraisers engaged in unfair or deceptive acts or practices, (2) which had an impact on the public interest, and (3) that RFT suffered an ascertainable loss of money or property as a result of the violation *Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 50, 691 S.E.2d 135, 149(2010).

when previous buyers were forcing the developer, LGD, to buy their lots back, and when LGD did not have the funds to satisfy those buy-back obligations, constitutes a deceptive act or practice.

Second, there is also no dispute that the appraisals had an impact on the public interest because they had the potential for repetition and had in fact been repeated.

> The potential for repetition may be demonstrated in either of two ways: (1) by showing the same kind of actions occurred in the past; or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts.

*Wright v.* Craft, 372 S.C. 1, 30, 640 S.E.2d 486, 501 (Ct.App. 2007) (citation omitted).  As explained above, inflated appraisals directly harm the public interest in that, by their very nature, they cause market values to be inflated and cause an unjustified increase in the price of deed stamps, which is a function of the sales price.  The potential for repetition was also established by the fact that Appraisers performed two appraisals, each of which contained the same misleading statements.  Indeed, the fact that the Appraisers ignored the requirements of USPAP in both appraisals establishes that there was at least a *potential* that such misleading practices would be repeated in the future.[7]

---

[7] RFT sought to admit appraisals of Lots 14 and 41 in Planters Row performed by Appraisers which were subject to many of the same misleading characteristics as

Finally, Mr. Roatch testified without contradiction that RFT would not have purchased the lots in the absence of appraisals which valued the lots at their purchase prices or more. Transcript p. 54, line 4 to p. 55, line 3; JA 158-59. His reliance on the appraisals resulted in an ascertainable loss of money or property of $537,500.00.

In its Order of April 23, 2014, the district court did not address any of RFT's contentions regarding record evidence or elements of a claim. It merely concluded that the jury had heard all of the evidence and had rendered its verdict. Order at 4; JA 577. The problem with the court's ruling, however, is that the UTPA claim should not have gone to the jury. RFT believes that based upon the undisputed evidence, the district court should have directed a verdict in RFT's favor at the close of all the evidence. Indeed, the jury verdict could have been influenced by many different factors other than proper application of the law, to include erroneous evidentiary rulings and errors in the charge. The very purpose of a JAML motion is to insure that an improper verdict is not permitted to stand. As stated in the Advisory Committee's note to the 1991 Amendment to Fed.R.Civ.P. 50(b): "In ruling upon such a motion, the court should disregard any jury

---

the subject appraisal. Trial Exhibit Nos. 8, 10 (for i.d. only); JA 533, 540. As discussed below at p. 22-23, the district court improperly excluded the other appraisals. Transcript p. 210, line 11 to p. 212, line 15; JA 277-79.

determination for which there is no *legally sufficient* evidentiary basis enabling a reasonable jury to make it." (Emphasis added).

RFT therefore respectfully requests the Fourth Circuit to reverse the decision of the district court, to enter judgment as a matter of law in favor of RFT in the amount of its actual damages of $537,500.00, and to remand the UTPA cause of action for the purposes of determining whether RFT's damages should be trebled pursuant to S.C. Code Ann. § 39-5-140(a)(1985) and awarding attorney's fees and costs under that provision.[8]

---

[8] Section 39-5-140(a) provides:

> Any person who suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages. If the court finds that the use or employment of the unfair or deceptive method, act or practice was a willful or knowing violation of § 39-5-20, the court shall award three times the actual damages sustained any may provide such other relief as it deems necessary or proper. Upon the finding by the court of a violation of this article, the court shall award to the person bringing such action under this section reasonable attorney's fees and costs.

## II.   RFT IS ENTITLED TO A NEW TRIAL ON THE PROFESSIONAL NEGLIGENCE AND UTPA CAUSES OF ACTION.

### A.   Prejudicial Evidentiary Rulings.

RFT contends that the district court made three evidentiary rulings which negatively impacted its substantial rights.  The Fourth Circuit reviews a trial court's exclusion or admission of evidence for abuse of discretion.  *United States v. Medford*, 661 F.3d 746, 751 (4th Cir. 2011).  Admitting or excluding evidence in reliance upon erroneous factual or legal premises constitutes an abuse of discretion.  *United States v. U.S. Training Center, Inc.*, 2012 WL 6052051 at *6 (4th Cir.2012) (citing *United States v. Henry*, 673 F.3d 285, 291 (4th Cir. 2012)).  An abuse of discretion will not justify granting a new trial unless shown to have negatively impacted substantial rights.  *Id*. at n. 12 (citation omitted).  As the Fourth Circuit explained,

> evidentiary errors do not affect substantial rights, and thus are harmless, if the reviewing court is "able to say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors'"

*Buckley v. Mukasey*, 538 F.3d 306, 320 (4th Cir. 2008) (citing *Taylor v. Va. Union Univ.*, 193 F.3d 219, 235 (4th Cir. 1999) (enbanc) (citation omitted)).  The three disputed evidentiary rulings in this case each support granting a new trial under these standards.

### (1) The District Court Erred by Excluding
### Appraisals of Lots 14 and 41._____

RFT offered into evidence appraisals performed by Appraisers of two other

lots located in Planters Row, Lots 14 and 41.  Proffer of Trial Exhibit Nos. 8, 10

(for i.d. only), Transcript p. 210, line 11 to p. 212, line 15; JA 277-79.  Those

appraisals were unquestionably relevant to proof of RFT's UTPA claim because

they contained virtually identical misrepresentations and misleading statements to

those in the appraisals at issue in this case and, thus, constituted cogent evidence of

the public interest and potential for repetition elements of the claim.  *See Wright v.*

*Craft*, 372 S.C. 1, 29-31, 640 S.E.2d 486, 501-02 (Ct.App. 2007); *Barnes v. Jones*

*Chevrolet Co., Inc.*, 292 S.C. 607, 612-13, 358 S.E.2d 156, 159 (1987).  These

additional appraisals also would have established that RFT was not the only

purchaser affected by Appraisers' deceptive acts and practices.  *See Barnes*, 292

S.C. at 612, 358 S.E.2d at 159 (public interest requirement may be satisfied by

proof that deceptive practice affected persons other than the parties to a

transaction.)  The sole ground relied upon by the district court for exclusion of the

appraisals was that they were not offered along with expert testimony regarding the

comparables used in those appraisals. Transcript p. 212, lines 7-13; JA 279.  This

ruling, of course, fails to consider the fact that there is no need for expert testimony

where the jury has before it record evidence which flatly contradicts misleading

statements appearing not only in the appraisals of Lots 28 and 31, but also in the

appraisals of Lots 14 and 41.  Nor is expert testimony needed where there is undisputed evidence that the Appraisers failed to perform certain duties in appraising Lots 14 and 41 which were required by USPAP.  Either they did those things, or they did not.

By excluding the other appraisals, the district court effectively prevented RFT's attorney from examining Powell regarding any aspect of the appraisals which was similar to the appraisals of Lots 28 and 31.  As discussed above, there were numerous other misleading aspects in which the appraisals were identical to those of Lots 28 and 31, to include the falsely rosy descriptions of Planters Row and the false certifications of compliance with USPAP.  The district court did not address any of these similarities; and its exclusion of the appraisals constituted an abuse of discretion based upon the erroneous legal conclusion that in order for the clearly relevant appraisals to be admissible for any purpose, they were required to be accompanied by expert testimony.  This error seriously harmed RFT's ability to prove its UTPA claim and, therefore, harmed its substantial rights.  RFT believes that it should be awarded a new trial on this ground.

### (2)  The Court Erred by Refusing to Allow RFT to Question Appraisers Regarding Compliance with USPAP.

The appraisals reflect, and Powell admitted on the stand, that Appraisers certified that both appraisals were performed in compliance with USPAP.  The

district court did admit a copy of USPAP into evidence. (Trial Exhibit No. 19; JA 507). In addition, the Court permitted counsel to read portions of USPAP and then to ask Powell whether he took various actions, but did not permit counsel to ask Powell whether those actions were required by USPAP. Transcript p. 129, line 15 to p. 130, line 5; p. 133, lines 15-18; JA 227-28, 231. The Court also precluded RFT's attorney from arguing the relevance and effect of USPAP in his closing. As a result, the jury was placed in a situation where it could read those rules; would have to speculate as to why they were in evidence; would have to decide without any guidance whether Appraisers were in compliance with the rules; and, then, would have to determine, without any instruction from the district court, the relevance of non-compliance with the UTPA to the professional negligence and UTPA claims.

The USPAP were clearly relevant, given Appraisers' certification of compliance, and were, therefore, proper subjects for cross-examination of Appraisers and their expert and for closing argument. The limitations imposed upon RFT in connection with USPAP necessarily confused the jury, greatly prejudiced RFT's ability to prove key elements of both the negligence and UTPA causes of action, and created a very real potential for an incorrect verdict. The court's limitations constituted an abuse of discretion resulting in manifest prejudice to RFT's substantial rights.

### (3)  The Court Erred by Admitting Testimony
of Respondent Adams.

On August 1, 2013, RFT moved *in limine* to exclude from evidence any mention of the state court proceedings between RFT and T&A, and to exclude Welborn Adams from testifying in this case.  JA 125.  The Motion was based on the facts that Adams' testimony was not relevant to any issue in this case; that it would mislead the jury; that it would confuse the issues; and that it was unfairly prejudicial.  The Court granted the motion in minor part at trial (Transcript p. 10, line 9 to p. 16, line 16; JA 143-49) but effectively denied the core of the motion by allowing Defendants to question Mr. Adams about virtually any event connected to the state court case, as long as the case itself was not mentioned.  *Id.*

Rather than directly asking Adams what the final result of the state court trial was, Defendants asked him whether or not RFT and Roatch had "charged" him with, or "accused" him of, the very same things with which Appraisers were accused: violation of the UTPA, professional negligence, and misrepresentation and non-disclosure.  Adams Testimony, p. 302, line 9 to p. 303, line 2; JA 365-66.  Naturally, Adams, who had an axe to grind with RFT and Mr. Roatch as a result of the state court case and his inclusion as a defendant in this case, answered in the affirmative and in detail. *Id.* This line of questioning placed before the jury the very highly prejudicial information which RFT rightfully sought to exclude through its motion in limine.  Thus, without directly identifying the state court

case, Appraisers were allowed to place enough facts before the jury from which they might incorrectly infer that RFT was, in this case, merely seeking some other party upon whom to blame its loss; that RFT had probably already had one bite at the apple and had lost; and/or that and Mr. Roatch was litigious and confrontational.

A similar problem was addressed in *Ragin v. Newburgh Enlarged City School Dist.*, 2011 WL 2183175 (S.D.N.Y. 2011). There, the defendants sought to introduce into evidence two other lawsuits which the plaintiff had filed against other employers. In excluding the evidence, the district court reasoned:

> Even if the Court were to accept that these are valid arguments for the admission of evidence of Ragin's prior litigation, Rule 403 requires exclusion of the evidence of prior litigation because there is too high a risk of juror prejudice and confusion. This case is about Ragin's allegations against NECSD and Lewis. The introduction of evidence concerning Ragin's past litigation would distract the jury from the central issues in the trial and may well lead to prejudice against Ragin as a frequent litigant. We would be getting too close to propensity evidence. Any small probative value that the evidence of Ragin's prior lawsuits has is substantially outweighed by the high risk of jury confusion and prejudice, and therefore, Defendants' motion is denied.

*Id.* at * 2; *see, also, Newman v. McNeil Consumer Healthcare*, 2013 WL 4460011 at ** 18-19 (N.D.Ill. 2013).

In this case, a primary reason for excluding Adams' testimony was that it was not relevant to any issue in this case. The sole alleged ground offered by Appraisers for admitting the testimony was that Adams could testify that RFT blamed T&A in the prior case for its losses. Transcript p. 300, line 24 to p. 302, line 6; JA 363-65. RFT explained to the district court judge that that was not an appropriate ground because, despite the fact that T&A may have been *a* cause of the losses, T&A's actions in connection with the closing would have never been an issue had the appraisals been properly preformed and not misleading. Transcript p. 10, line 9 to p. 16, line 14; JA 143-49. At trial, moreover, Adams was permitted to testify to far more information beyond the fact that he had also been blamed for the loss. Adams Testimony, p. 283, line 10 to p. 303, line 18; JA 346-66.

In addition to lack of relevance, RFT also objected pursuant to Fed.R.Evid. 403[9] that testimony from Adams would mislead the jury, would confuse the issues, and would result in unfair prejudice to RFT. Motion in Limine; JA 125. RFT respectfully submits that given the nature of Adams' testimony, the district court

---

[9] Rule 403 provides in relevant part:

> The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury . . . .

could not have concluded with fair assurance that the verdict was not substantially swayed by the testimony. *Buckley*, 538 F.3d at 320.

### B.     Errors in the District Court's Charge to the Jury.

#### (1)   The District Court Erred by Refusing to Charge RFT's Supplemental Request to Charge No. 17.

RFT explained above the crucial importance of the USPAP to this case. See pp. 8-9 *supra*. Its Supplemental Request to Charge ("SRC") No. 17; JA 426, was drafted to accomplish several objectives, to include advising the jury that an appraiser's standard of care was established by S.C. Code Ann. § 40-60-38(2011)[10] which requires compliance with USPAP; listing various duties imposed upon appraisers by USPAP; explaining the showing which RFT was required to make in order to establish that Appraisers owed RFT a duty of care under USPAP; and advising the jury regarding negligence and negligence *per se* resulting from violations of USPAP.[11]

---

[10] S.C. Code Ann. § 40-60-38 (2011) provides

> All . . . state licensed and certified appraisers shall conform their professional conduct to the Uniform Standards of Professional Appraisal Practice and its amendments, as promulgated by the Appraisal Standards Board.

[11] Supplemental Request to Charge No. 17 is too lengthy to be reproduced in a footnote, but is reproduced in the Joint Appendix at 426.

RFT submits that under Fourth Circuit precedent, it was entitled to have the district court charge SRC 17 because it reflects RFT's theory of the case; because it is legally correct as reflected by the citations appearing with the charge; and because, as discussed above, the appraisals and Powell's testimony regarding actions which he did not take in performing the appraisals establish that there was evidence on the record to support the charge. *Jacob's Press Incorporated v. The Hartford Steam Boiler Inspec. & Inc. Co.*, 1997 WL 90665 at * 11 (4th Cir. 1997) (Unpublished) (citing *Gander v. Mr. Steak of Sun Ray, Ins.*, 774 F.2d 920, 924 (8th Cir. 1985)). Given that the district court admitted the USPAP into evidence, would not permit RFT's counsel to argue to the jury about its significance, and would not allow RFT to question Powell concerning his understanding of, and compliance with, USPAP, the court's failure to charge SRC 17 was prejudicial, leaving the jury with no guidance as to how to use those standards, if at all.

The district court appeared to hold in its order denying RFT's new trial motion that RFT waived its right to object to the omission of SRC 17 from the charge because counsel did not object on the record *after* the jury had been charged. Order of April 23, 2014, at 7-9; JA 580-82. This holding is surprising given the fact that Fed.R.Civ.P. 51(b)(2) states in relevant part that

> [t]he court . . . must give the parties an opportunity
> to object on the record . . . *before* the instructions
> and arguments are delivered. (Emphasis added).

29

The record will reflect that the district court was still considering modifications of the charge after the final charging conference, (Transcript p. 336, line 20 to p. 338, line 14, JA 388-90), and, thus, that the parties were not provided final copies of the charge until just before it was given. The record will also reflect that the district court did not provide the parties with an opportunity to object to the charge until *after* the jury had been charged (Transcript p. 331, lines 4 to 10; JA 384); therefore, there could not possibly have been an effective waiver of the right to object to the failure to charge SRC 17. Failure to charge SRC 17 constituted an abuse of discretion, which negatively impacted substantial rights of RFT.

### (2) The District Court's Charges Mistated the Law Regarding RFT's UTPA Cause of Action.

RFT objected to the district court's charge on the UTPA cause of action based upon language which was erroneously omitted from that charge and upon language which was legally incorrect. First, RFT objected (Transcript, p. 309, lines 1-9; JA 371) because the charge failed to advise the jury that even literally true statements were capable of being deceiving and misleading and that evidence of intent to deceive was not necessary to proof of a UTPA violation. *See State ex rel McLeod v. C&L Corp.*, 280 S.C. 519, 525, 313 S.E.2d 334, 338 (Ct.App. 1984).

The second error in the UTPA charge was that the jury was instructed that an act or practice could not constitute a deceptive act unless it had an impact upon the marketplace. Transcript, p. 404, lines 10-14; JA 405. No South Carolina case

30

has ever imposed such a requirement under the UTPA.  Again, only a *potential* for repetition is required.

The third and most serious error in the court's UTPA charge was the inclusion of the sentence, "Further, conduct that affects only the parties involved cannot satisfy the public interest requirement."  Transcript, p. 405, lines 3-4; JA 406.  This sentence charged the jury that proof that Appraisers' conduct had an *actual* (as opposed to potential) effect on some person other than RFT was an essential element of a UTPA violation, which is an incorrect statement of the law.  As virtually every reported UTPA case reflects, conduct can violate the UTPA where it has only *the potential* for repetition, and, thus, only *the potential* to affect others.  *See Barnes* 292 S.C. at 612-13, 358 S.E.2d at 159-60 (Ct.App. 1987).  As the District of South Carolina has correctly explained in applying the UTPA: "'Conduct that affects only the parties to a transaction *and not the public interest* provides no basis for a SCUTPA claim.'"  *Ethox Chemical, LLC v. Coca-Cola Co*., 2013 WL 41001 at *2 (D.S.C. 2013) (*quoting Bessinger v. Food Lion, Inc.*, 305 F.Supp.2d 574, 581 (D.S.C. 2003)) (emphasis added)).  The district court's failure to include language as such as the emphasized language from *Ethox Chemical* therefore constitutes prejudicial error.

In its order denying the new trial motion, the district court does not address any of the specific errors raised by RFT but simply concludes without explanation

31

that its charge correctly stated the law under the UTPA.  RFT submits, however, that errors in the charge were so substantial as to require a new trial on the UTPA cause of action.

### (3)  The District Court Erred by Giving a Charge on Comparative Negligence.

The court's charge on comparative negligence, at six pages long, was by far the longest in the entire charge.  Charge, p. 411, line 20 to p. 417, line 2; JA 412-18.  Indeed, the charge on negligence was only two pages long (*id.* p. 397, line 13 to p. 399, line 8; JA 398-400), as was the charge on the UTPA (*id.* p. 403, line 8 to p. 405, line 4; JA 403-406).  The comparative negligence charge repeated the same points numerous times again drawing undue attention to the defense and ascribing to it more importance than to any other charge.  These facts alone render inclusion of the charge unfairly prejudicial to Plaintiff.

This is particularly so given that a charge on comparative negligence is not proper in a professional negligence action.  In *Aden v. Fortsh*, 776 A.2d 729 (N.J. 2001), the Supreme Court of New Jersey held that a plaintiff's negligence could be raised as a defense in a professional negligence action only in two situations, neither of which is present here: (1) where "the conduct of the client rather than that of the professional, was the sole proximate cause of the alleged tort;" and (2) where the client's conduct, although "not the sole proximate cause of the harm, nevertheless contributed to or affected the professional's failure to conform to the

32

standard of care of the profession."   776 A.2d at 799 (*citing Steiner Corp. v. Johnson & Higgins*, 996 P.2d 531, 532 (Utah 2000) and *Scioto Mem. Hosp. Ass'n v. Price Waterhouse*, 659 N.E.2d 1268, 1274 (Ohio 1996) (Cook, J. concurring)); *see*, *also*, *McLister v. Epstein & Laurence, P.C.*, 934 P.2d 844, 846-47 (Colo.App. 1996); *Board of Trustees, etc. v. Cooper & Lybrand*, 208 Ill.2d 259, 272, 803 N.E.2d 460, 468 (Ill. 2003).

Based upon the reasoning of these cases, the defense of comparative negligence should normally have no place in a professional negligence case such as this one, especially where the charge on the defense is inordinately lengthy, suggestive, and confusing.  Moreover, even if the charge were proper in this case, it should have been clearly stated in the charge that the defense of comparative negligence was inapplicable to the UTPA claim.  Thus, without proper guidance, there was nothing to prevent the jury from applying the defense of contributory negligence to the UTPA claim.

## III.   THE DISTRICT COURT ERRED BY DISMISSING RFT'S CIVIL CONSPIRACY, SCUSA, AND UTPA CLAIMS AGAINST T&A AND IN DISMISSING ILSFDA AND FEDERAL SECURITIES CLAIMS AGAINST APPRAISERS AND T&A.

### A.   Relevant Allegations of the Complaint.

All claims against T&A arose from its acts and omissions while serving as the attorney for both the purchaser, RFT, and the seller, LGD, in a complicated real estate transaction involving lots 28 and 31.  RFT was induced to agree to purchase

the lots by the fraud of LGD and its agents. Complaint ¶¶ 33-38, 48-53; JA 13-15, 19. T&A are alleged to have actively facilitated that fraud, principally by violating their fiduciary duty to disclose material facts regarding the transaction; by preparing false and misleading closing documents; and by orchestrating and organizing the closing as an illegal "flip transaction." Indeed, T&A's active participation was the most important factor to consummating the sales of Lots 28 and 31 to RFT.

At ¶ 44 of the Complaint, JA 17-18, it is alleged that T&A failed to disclose numerous material facts to RFT. RFT was not advised that T&A had a long-standing business relationship with LGD and its principal, Gilbert. Moreover, T&A was aware that the October 30, 2007, closing date was selected by LGD because it was in dire need of the proceeds from the sale of Lots 28 and 31 to RFT in order to satisfy contractual obligations to repurchase those lots from the owners. *Id*. ¶¶ 44(a), 45; JA 17-18. In other words, LGD was in poor financial condition; and this fact was not disclosed to RFT. *Id.* ¶ 51; JA 19. Moreover, the obvious inference to be drawn from these allegations was that the sales to RFT were the key ingredient to a fraudulent scheme which was designed to extricate LGD from immediate financial problems and, thereby, to avoid a $25,000.00 penalty and resulting lawsuits.

RFT also alleged that T&A knowingly facilitated the scheme by orchestrating the closing in a manner which has been described as a "flip transaction"[12] pursuant to which concurrent closings were scheduled wherein previous owners of the lots deeded the lots back to LGD, which would then deed them to RFT after payment of $570,000.00.  *Id.* ¶¶ 43 (l), 44; JA 17, 18.  The vast majority of that money, $500,000.00, was then paid to the previous owners of the lots; and LGD pocketed the remaining $70,000.00.  *Id.* ¶ 43 (l), JA 17.  RFT was under the impression that the entire amount was to be used to complete the infrastructure and amenities in Planters Row, thereby enhancing its investment. Roatch Testimony, p. 61 line 20 to p. 62, line 16; JA 165-66.  T&A concealed from RFT the simultaneous closings and the reasons therefor, LGD's fragile financial condition, the use to which RFT's funds would be applied, and the fact that LGD was repurchasing the lots at the same time as the sales to RFT, for $70,000.00 *less* than RFT was to pay.  Complaint ¶ 44; JA 17-18.

Finally, T&A's final act was to falsify HUD-1 closing statements in order to make it more difficult for RFT and the previous owners of the lots to discover the fraud.  *Id.* ¶ 44c (i-ii); JA 17. Thus, the HUD-1's provided to the previous owners

---

[12] A "flip transaction" is one "where the proceeds from the second transaction are used to fund the initial transaction."  *In re Barbare*, 360 S.C. 560, 567-68, 602 S.E.2d 382, 385-86 (2004).  The South Carolina Supreme Court has held that a lawyer's "participating in a flip transaction would constitute misconduct."  *In re Faysoux*, 381 S.C. 637, 642, 675 S.E.2d 428, 431 (2009).

falsely reflected that the funds were paid by LGD and not by the true source, RFT, (*id.* ¶ 44c (ii), JA 17), and that only $500,000.00 had been paid for the lots. *Id.* ¶ 43 (l), JA 17. RFT's HUD-1, on the other hand, misleadingly stated that the entire $570,000.00 was going to LGD when $500,000.00 of that amount actually went to the prior owners.[13] *Id.* ¶ 44c (i); JA 17.

It is against these allegations that the district court's dismissals of the various claims should be judged. This is particularly true given the fact that no court and no jury has ever held or decided that there was no evidence tending to establish any of the above facts.

### B.     The District Court Erred in Dismissing the SCUSA, UTPA, and Civil Conspiracy Claims against T&A.

In its Order of May 24, 2011, the district court dismissed RFT's SCUSA, UTPA, and civil conspiracy claims because it believed them to be barred by the decision of the state trial court. JA 56-63. RFT respectfully submits that the district court's order should be reversed, and those claims reinstated, because the district court's application of res judicata was in error.

---

[13] The South Carolina Supreme Court recognized that misuse of HUD-1's in the fashion employed by T&A has resulted in "both federal criminal penalties and . . . disciplinary action by this Court." *In re Barbare*, 360 S.C. at 573-74, 602 S.E.2d at 388-89; *In re Latham*, 360 S.C. 326, 338, 600 S.E.2d 902, 908-09 (2004); *In re Johnson*, 375 S.C. 409, 503 n.2, 654 S.E.2d 272, 274 n.2 (2007). Federal criminal convictions have been based upon false HUD-1's. See, e.g., *United States v. Allen*, 210 WL 125467 at * 4 (11th Cir. 2011); *United v. Gimsell*, 2007 WL 2032927 at * 11 (E.D.Pa. 2007); *United States v. Gisham*, 146 F.3d 6 (1st Cir. 1998); *United States v. Behenna*, 1995 WL 3731 (1st Cir. 1995).

### (1) **Violation of SCUSA.**

The state court trial judge directed a verdict on Plaintiff's claim for aiding and abetting securities fraud in violation of SCUSA, S.C. Code Ann. § 35-1-509(g)(5) on the sole ground that the transactions at issue in that case did not involve the sale of a security.  State Court Trial Transcript p. 896, lines 7-17; JA 116. This ruling, in turn, constituted the only ground for the district court's decision to dismiss Plaintiff's SCUSA claim based upon res judicata.   Order dated May 24, 2011, at 9; JA 61.  On appeal, the South Carolina Supreme Court declined to affirm the sole ground relied upon by the state trial court judge, choosing instead to affirm upon two new grounds not raised at the trial level.[14]  *RFT Management Co., L.L.C. v. Tinsley & Adams, L.L.P.*, 399 S.C. 322, 339-40, 732 S.E.2d 166, 175 (2012).

As a result, there is no final state court order holding that the subject transactions did not involve the sale of securities; and there is no prior decision in this court so holding, except for the prior order based upon the reasoning of the state court trial judge which was later mooted by the order of the state supreme

---

[14] Following receipt of the South Carolina Supreme Court's opinion, RFT filed a motion for reconsideration in which it requested the district court to reinstate the SCUSA, UTPA, and civil conspiracy claims based upon an intervening change in controlling law.  Motion for Reconsideration, JA 107.  Grounds asserted on appeal for reversal of the dismissal order also appear in RFT's Memorandum in Support of the Motion for Reconsideration.  (Docket No. 164).  That motion was denied by text order dated December 11, 2012.  JA 120.

court. These circumstances by themselves require reinstatement of the SCUSA

cause of action. This conclusion is even more compelling given what actually

occurred during the state court trial. While arguing in favor of RFT's directed

verdict motion and against T&A's motion, RFT's counsel explained in detail to the

trial judge that RFT had introduced evidence covering every element of the claim.

State Court Trial Transcript pp. 893-96; JA 113-14. From there, the following

exchange took place between counsel and the trial judge:

> MR. SWAGART: So you go from there and
> then the only issue becomes if Mr. Adams
> was aware that this kind of misleading
> conduct was going on and he acted in these
> closings with knowledge of the conduct and
> with knowledge that what he was doing in
> the closings would assist the conduct, that
> we [*sic*] [he] qualify as an aider and abetter
> [*sic*] under the statute and I think we have
> introduced facts that would cover all of
> those elements.
>
> THE COURT: All right. *I agree with you
> all the way down the line* except, I have
> done some research last night and again this
> morning. I don't believe this investment by
> your client was a security under the
> definition provided under Title 35, so I will
> dismiss or grant a directed verdict [for
> Defendants] on that cause of action.

*Id*. p. 895, line 23 to p. 896, line 13 (emphasis added); JA 115-16. What this

discussion means, of course, is that if the trial judge *had* concluded that Plaintiff's

investment *did* constitute a security, the trial judge very probably would have

denied T&A's motion for a directed verdict and would have either granted RFT's motion for a directed verdict or sent the SCUSA claim to the jury.  With the "security" issue purposefully not affirmed by the Supreme Court in its opinion, the state court trial transcript could not provide a basis for dismissal of the SCUSA claim in this case.

## (2) Violation of the UTPA.

The state court trial judge directed a verdict against Plaintiff on its UTPA cause of action against T&A on the sole ground that the legal profession is exempt from the UTPA.  State Court Trial Transcript, p. 922 line 22 to p. 923 line 2; JA 117-18.  The South Carolina Supreme Court reversed that decision, finding that the legal profession is not exempt from the UTPA (399 S.C. at 338-39, 732 S.E.2d at 174), thereby divesting the district court's order of its only ground for application of res judicata and dismissal.

## (3) Civil Conspiracy.

The district court dismissed the civil conspiracy claim because it believed that the claim could have been raised in the state court case and involved the same transactions and occurrences which underlie the claims asserted in that action. Order of May 24, 2011, at 9-10; JA 61-62.  What it failed to recognize, however, was the procedural importance of the fact that no conspiracy claim had been alleged in state court.  As the South Carolina Court of Appeals explained:

> "The rule as to the conclusiveness of the prior adjudication has a different application where the prior and subsequent causes of action are identical and where the subsequent action is on a different cause of action." Although res judicata may apply even though the plaintiff in the first suit proceeded under a different legal theory," where the second suit is upon a different claim, the former judgment is conclusive only as to those issues actually determined."

*Platt v. Justin Enterprises*, 374 S.C. 504, 511, 649 S.E.2d 92, 95 (Ct.App. 2007) (internal footnotes and citations omitted); *accord, Foreman v. Martin*, 325 N.E.2d 378, 379 (Ill. Ct. App. 2d Dist. 1st Div. 1975) (first judgment "is only conclusive as to those questions actually raised and determined therein.") Because there is no way to determine from the jury verdict which issues were actually determined in state court, there is no basis for applying res judicata to the civil conspiracy claim in this case.

## C.    The Complaint States Claims under ILSFDA and under Federal Securities Law.

The district court erred in dismissing RFT's causes of action under ILSFDA and under the federal securities laws for failure to allege sufficient facts to constitute claims upon which relief may be granted. Order dated January 26, 2012 at 4-8; JA 99-103. RFT respectfully appeals these holdings because it believes that, instead of construing the Complaint in the light most favorable to RFT, the

district court construed the Complaint far more restrictively than permitted by decisions of the Fourth Circuit under Fed.R.Civ.P. 12(b)(6).

### (1)  The District Court Erred in Dismissing RFT's Federal Securities Claim.

The district court dismissed RFT's claim for violations of 15 U.S.C. § 78j[15] and Rule 10b-5 promulgated thereunder on the ground that the Complaint could only be read as alleging aider and abettor liability on the part of T&A and Appraisers.  Order dated January 1, 2012, at 6-8; JA 101-103.  Since there is no Rule 10b-5[16] aider and abettor liability, the district court dismissed the Rule 10b-5

---

[15] 15 U.S.C. § 78j provides in relevant part that it is:

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

[16] Rule 10b-5, 17 C.F.R. § 240.10b-5, states that it shall be unlawful for any person:

> (a)  To employ any device, scheme, or artifice to defraud,

41

claim.  *Id.* A reading of the Complaint reveals, however, that it contains sufficient allegations to permit a reasonable inference that T&A were principal violators of the 15 U.S.C. § 78j and Rule 10b-5.

RFT understands that in reviewing an order granting a motion to dismiss under Rule 12(b)(6), the Court will "determine de novo whether the complaint, under the facts alleged and under any facts that could be proved in support of the complaint, is legally sufficient."  *Eastern Shore Markets, Incorporated v. J.D. Assoc. Lim. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted).   In making that determination, the Court will "assume the truth of all facts alleged in the Complaint . . ., [and] must take the facts in the light most favorable to the plaintiff . . . ." *Id.*  Thus,

> a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in

---

> (b)   To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or,
>
> (c)  To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

> the plaintiff's favor, it appears certain that the
> plaintiff cannot prove any set of facts in support of
> his claim entitling him to relief.

*Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Applying these standards "necessarily entails a case-by-case assessment of the complaint as a whole." *Teachers Retirement System of LA v. Hanter*, 477 F.3d 162, 174 (4th Cir. 2007).

As explained in detail above (*see* pp. 33-36 *supra*), allegations of the Complaint, viewed as a whole, satisfy these standards due to the facts that T&A's involvement was the single most important factor to the accomplishment of the lot sales and that T&A fully understood why its participation in LGD's scheme was essential. True, RFT does allege that T&A and Appraisers were jointly and severally liable by reason of having aided and abetted the securities violations; however, referring to T&A as "aiders and abettors" states only a legal conclusion as to the legal effect of their actions, and does not foreclose all other possible legal bases for liability. RFT submits that the other allegations referred to above suffice to permit the reasonable inference that T&A and Appraisers were also primary violators of the securities laws.

Indeed, proof of all of the allegations of the Complaint would establish that without T&A and Appraisers, the sales of the lots could not have closed and that the closings were orchestrated by T&A in a manner specially designed to insure

that nothing would come to RFT's attention which would deter it from consummating the sales.  Complaint ¶ 45; JA 18.  The United States Supreme Court held in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) that "[a]ny person or entity, including a lawyer, . . . who . . . makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be held liable as a primary violator under 10b-5 . . . ."  Similarly, the Fourth Circuit recognized that where a fiduciary duty of disclosure exists, an attorney may be held primarily liable under Rule 10b-5 for failing to disclose material information.  *See Schatz v. Rosenberg*, 943 F.2d 485, 490-91 (4th Cir. 1991); *see*, *also*, *Thompson v. Paul*, 547 F.3d 1055, 1061 (9th Cir. 2008).

 Based upon the allegations of the Complaint and the cases cited above, RFT believes that the district court erred by dismissing its cause of action based upon Defendants' violations of the federal securities laws.

### (2) The District Court Erred by Dismissing The ILSFDA Claim against T&A.

The district court dismissed RFT's claim against T&A under ILSFDA because, in its view, there is no aider and abettor liability under that Act and because T&A is not alleged to have directed or controlled the ILSFDA violations. Order dated January 26, 2012, at 6; JA 101.

Section 1703(a)(2) of the ILSFDA makes it unlawful for any developer or agent, in connection with the sale of a lot not otherwise exempt under the ILSFDA:

44

> (A)  to employ any device, scheme, or artifice to defraud;
>  * * * *
> (B) to engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon a purchaser.

The term "agent" is defined in the § 1701(6) of the ILSFDA as:

> any person who represents, or acts for or in behalf of, a developer in selling or leasing . . . any lots or lots in a subdivision; but shall not include an attorney whose representation of another person consists solely of rendering legal services.

In ¶ 54 of the Complaint, JA 19, RFT alleges that Adams was an agent of the developer. Adams is alleged to have been intimately involved in the sale of the lots through his orchestration of the deceitful flip transaction, preparation of false closing documents, and concealment of material information.  Complaint ¶ 44; JA 17-18.  These activities were naked efforts to preserve the false, rosy picture of the transaction and hardly constitute the rendering of legal services. While it is alleged in the Complaint that T&A's activities legally amount to aiding and abetting, RFT submits that they may also serve as grounds for finding that T&A was a primary violator of ILSFDA.   Under the pleading standards discussed above, these allegations were sufficient to satisfy the requirements of Rule 12(b)(6). Consequently, the district court erred by dismissing RFT's ILSFDA cause of action.  Indeed, if an attorney may be held liable for securities fraud due to non-disclosure of material facts (*Schatz*, 943 F.2d at 490-91), there is no reason why an

45

attorney who fraudulently orchestrates a lot sale should not be held liable under ILSFDA as well.

### D.  The District Court Should Have Granted RFT's Motion to Amend the Complaint.

RFT moved to amend its federal securities cause of action in order to cure any pleading deficiencies perceived by the district court.  A copy of the proposed First Amended Complaint was attached to the Motion to Amend.  JA 71.  The requested amendment would have clarified that RFT was also alleging that T&A was primarily liable for the securities violations.  The chronology discussed above reflects that no pleading deficiencies were noted by T&A prior to the expiration of the April 18, 2011, deadline (Order p. 2, ¶ 4; JA 51) for moving to amend the complaint.  The first mention of *potential* deficiencies came in the district court's order of May 24, 2011.  Order at 11; JA 63.  Just three days later, T&A filed its second motion to dismiss.  JA 65.   And four days after that, RFT filed its motion to amend.   JA 69.   The district court held that these circumstances were not sufficient to constitute good cause for missing the filing deadline in the scheduling order, explaining that it was "not the responsibility of the court or the opposing parties to notify a plaintiff as to deficiencies in the complaint."   Order dated January 26, 2012, at 9; JA 104.

The district court's reasoning is difficult to understand, given that unless an opposing party challenges the sufficiency of a pleading under Fed.R.Civ.P.

46

12(b)(6), a pleader is normally entitled to go to the jury based upon that pleading. In any event, a plethora of courts faced with motions to amend under similar circumstances have found there to be good cause under Fed.R.Civ.P. 16(b)[17] and have granted the amendments.[18]

The primary determinant of "good cause" under Rule 16(b) is the moving party's diligence in seeking to amend. *Parker v. Columbia Picture Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). The following cases establish that RFT's timely actions in this case were sufficiently diligent to satisfy the "good cause" requirement. The proper disposition of RFT's motion to amend is suggested in *Morrow v. Keystone Builders, Inc.*, 2010 WL 2672354 (D.S.C. 2010). There, the magistrate's scheduling order imposed a deadline of March 30, 2009, for filing motions to amend. The defendants did not move to amend until after the deadline had passed. Upon those facts, the district court made the following findings:

> The Court finds that good cause exists to consider the Plaintiff's motion to amend the Amended Complaint. The Plaintiff's motion seeks to cure deficiencies in the Amended Complaint that were not raised by the Defendants until after the deadline for amending the pleadings had expired. The Plaintiff acted diligently by requesting

---

[17] Federal Rule of Civil Procedure 16(b) provides in relevant part that deadlines in a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge."

[18] Appellate review of the denial of a motion to amend a pleading is for abuse of discretion. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002).

> permission to amend the Amended Complaint at
> the time that she responded to the Defendants'
> motions to dismiss.  And, the Plaintiff filed
> a formal motion to amend after the Magistrate Judge
> entered his R&R.  Under these circumstances, the
> Court finds that the plaintiff has satisfied Rule
> 16(b) . . . .

*Id*. at *10.  In fact, courts often find good cause for allowing parties to amend their

pleadings after scheduling order deadlines where the need to amend arises from

prior orders which were filed after the deadlines had expired.  *See*, *e.g., Inge v.*

*Rock Fin. Corp.*, 281 F.3d 613, 625-26 (6th Cir. 2002); *In re Milk Prods. Antitrust*

*Litig*., 195 F.3d 430, 438 (8th Cir. 1999) (allowing amendment six months after

plaintiffs learned of deficiencies in a complaint from a dismissal of an earlier

complaint); *C.F. v. Capistrano Unified School Dist*., 656 F.Supp.2d 1190, 1193-94

(C.D.Cal. 2009) (finding good cause to permit amendment to assert defense when

court ruling made it far more likely that defense could succeed); *Harrison*

*Beverage, Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469-70 (D.N.J. 1990)

(delay satisfactorily explained where availability of a defense not apparent when

answer filed).  The *Inge* case is particularly instructive.  There, the "district court

had found an absence of good cause because Plaintiff sought to remedy matters

giving rise to dismissal of her second amended complaint."  281 F.3d at 625.

Plaintiff moved to amend "*a third time* just days after the dismissal order."  *Id*.

(emphasis added).  The Sixth Circuit reversed the district court even though the

48

motion to amend was not filed until several months after the scheduling order deadline, principally because "Plaintiff's request to amend was a prompt effort to remedy pleading deficiencies indentified by the district court in the dismissal order . . . ." *Id*. at 626.

RFT respectfully submits that the district court's denial of the motion to amend, given the procedural posture of this case when the motion was filed, constituted an abuse of discretion, justifying reversal by the Fourth Circuit.

## CONCLUSION

Based upon the foregoing arguments and authorities, RFT respectfully requests the Fourth Circuit to grant the following relief:

(1)   reversing the district court's denial of RFT's Motion for JAML on the UTPA claim, granting JAML to RFT on that claim in the amount of $537,500.00, and remanding this case to the district court for determinations of whether RFT's damages should be trebled and of the amount of attorney's fees to be awarded to RFT;

(2)   in the event the Fourth Circuit does not grant JAML on RFT's UTPA claim, reversing the district court's order denying RFT's new trial motion on the UTPA claim and remanding that claim for trial;

(3)   reversing the district court's order denying RFT a new trial on the professional negligence claim and remanding that claim to the district court for trial;

(4)   reversing the district court's orders dismissing the SCUSA, UTPA, and civil conspiracy claims against T&A and remanding those claims to the district court for further proceedings; and

(5)   reversing the district court's order denying RFT's motion to amend its claim for violation of 15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5 in the event the district court's order dismissing that claim is not reversed and remanding this case with instructions to file the proposed First Amended Complaint and for further proceedings.

## REQUEST FOR ORAL ARGUMENT

Appellant respectfully requests oral argument of this appeal.

Respectfully submitted,

s/Harry A. Swagart, III
Harry A. Swagart, III
Fed. Ct. I.D. No. 4398
HARRY A. SWAGART, III, P.C.
Post Office Box 7787
Columbia, South Carolina 29202
Tel. 803-779-0770
Fax 803-779-0771
harry@harryswagart.com

Columbia, South Carolina        ATTORNEY FOR PLAINTIFF
September 8, 2014               RFT MANAGEMENT COMPANY, LLC

50

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This brief complies with the Type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    The word count of this brief is <u>12,430.</u>

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using:

    <u>Microsoft Word, Times New Roman, 14 point font.</u>

September 8, 2014

<u>s/Harry A. Swagart, III</u>
Harry A. Swagart, III

51

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on September 8, 2014, I filed the foregoing Opening

Brief of Appellant with the Clerk of Court via hand delivery and electronically

using the Court's CM/ECF System, which will send notice of such filing to the

following registered CM/ECF users:

Matthew H. Henrikson
Henrikson Law Firm, LLC
P.O. Box 26554
Greenville, SC 29616

Amy Miller Snyder
Clarkson Walsh Terrell
& Coulter, PA
P.O. Box 6728
Greenville, SC 29606

*Counsel for Appellees*
*Tinsley & Adams LLP and Welborn D. Adams*

William A. Coates
Carroll H. Roe, Jr.
Roe, Cassidy, Coates & Price, PA
1052 North Church Street
Greenville, SC 29603

*Counsel for Appellees*
*John D. Powell and Professional Appraisal Service Incorporated*

s/Harry A. Swagart, III
Harry A. Swagart, III

# ADDENDUM A

**28 U.S.C. § 1291 United States Code (1982)**

**Final decisions of district courts.**

The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . .

**28 U.S.C. § 1331 (1980)**

**Federal question.**

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**28 U.S.C. § 1332 (2011)**

**Diversity of citizenship; amount in controversy; costs**

     (a)    The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between:

        (1)  citizens of different states . . . .

**Federal Rules of Civil Procedure**

**Fed.R.Civ.P. 12**

**Defenses and Objections: When and How Presented . . . .**

     (b)    How to Present Defenses.  Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion:

       \* \* \*

       (6)    failure to state a claim upon which relief can be granted . . . .

**Fed.R.Civ.P. 51**

**Instructions to the Jury; Objections; Preserving a Claim of Error**

54

(b)    Instructions.  The Court:

* * *

(2)    must give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and argument are delivered.

## South Carolina Code of Laws

### § 35-1-509.  Civil liability.

* * * *

(g)    The following persons are liable jointly and severally with and to the same extent as persons liable under subsections (b) through (f):

* * * *

(5) a person who, with actual knowledge that a person is committing acts sufficient to violate Sections 35-1-501 and 35-1-502, nonetheless intentionally furthers the violation with actual awareness that the person is rendering substantial assistance to the person committing the violation of Sections 35-1-501 and 35-1-502, thereby becomes an aider and abettor of the violation, and is therefore jointly and severally liable with and to the same extent as the assisted person who engaged in the fraudulent activity, provided, however, this subsection (5) does not require any due diligence investigation nor impose liability for failure to perform any due diligence investigation otherwise required.

### § 39-5-20.  Unfair methods of competition and unfair or deceptive acts or practices unlawful.

(a)    Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.