**RECORD NO. 14-1488**

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

RFT MANAGEMENT COMPANY, LLC,

*Plaintiff-Appellant,*

v.

JOHN D. POWELL; PROFESSIONAL APPRAISAL SERVICE
INCORPORATED; TINSLEY & ADAMS LLP;
WELBORN D. ADAMS,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT ANDERSON
(THE HONORABLE MARY G. LEWIS, U.S.D.J.)

**RESPONSE BRIEF
OF DEFENDANTS-APPELLEES JOHN D. POWELL,
PROFESSIONAL APPRAISAL SERVICE INC.,
WELBORN D. ADAMS AND TINSLEY & ADAMS, LLP**

William A. Coates
Carroll H. Roe, Jr.
ROE CASSIDY COATES & PRICE, PA
Post Office Box 10529
Greenville, SC 29603
864-349-2600
wac@roecassidy.com
proe@roecassidy.com
*Counsel for Defendants-Appellees
John D. Powell and Professional
Appraisal Service, Inc.*

Matthew H. Henrikson
Henrikson Law Firm, LLC
Post Office Box 26554
Greenville, SC 29616
864-672-7106
mhenrikson@henriksonlaw.com

Amy M. Snyder
Clarkson, Walsh, Terrell & Coulter, P.A.
Post Office Box 6728
Greenville, SC 29606
864- 232-4400
asnyder@clarksonwalsh.com
*Counsel for Defendants-Appellees Tinsley
& Adams, LLP and Welborn D. Adams*

## <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURES

TABLE OF AUTHORITIES……………………………………………...iii

JURISDICTIONAL STATEMENT……………………………………....1

STATEMENT OF ISSUES……………………………………………..1

STATEMENT OF THE CASE……………………………………………2

STATEMENT OF FACTS……………………………………………..4

SUMMARY OF ARGUMENT……………………………………………..13

ARGUMENT……………………………………………………...16

I.    <u>PLAINTIFF WAS NOT ENTITLED TO JUDGMENT AS A MATTER
OF LAW ON ITS UNFAIR TRADE CAUSE OF ACTION</u>……………...16

II.    <u>THE DISTRICT COURT CORRECTLY DENIED RFT'S MOTION
FOR A NEW TRIAL</u>……………………………………………21

    A.    EVIDENTIARY RULINGS……………………………………...22

        1.    The Court correctly limited RFT's use of the
Uniform Standards of Professional Appraisal Practice………22

        2.    The District Court did not err by excluding the
appraisals of Lots 14 and 41…………………………….23

        3.    The Court properly admitted the testimony of
Welborn Adams…………………………………….24

    B.    JURY CHARGES……………………………………………...27

        1.    The District Court's refusal to Charge RFT's Supplemental
Request to Charge No. 17 was not in error…………………...28

i

2.      The Court's Charge on Unfair Trade Practices
Was Correct……………………………………………..32

3.      Comparative Negligence……………………………..34

III.    RFT'S CLAIMS AGAINST ATTORNEYS ARE BARRED
BY RES JUDICATA…………………………………………35

IV.     THERE IS NO AIDER AND ABETTOR LIABILITY UNDER
THE FEDERAL SECURITIES ACT OR THE INTERSTATE
LAND SALES ACT…………………………………………...41

A.      SECURITIES ACT……………………………………42

B.      INTERSTATE LAND SALES ACT………………………43

V.      RFT'S UNTILIMELY MOTION TO AMEND HIS COMPLAINT
WAS PROPERLY DENIED………………………………….....46

CONCLUSION………………………………………………...50

CERTIFICATE OF COMPLIANCE…………………………...52

# <u>TABLE OF AUTHORITIES</u>

## CASES

<u>Page</u>

*Ashcroft v. Iqbal*
    556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)……………...35

*Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*
    99 F.3d 587 (4th Cir. 1996)………………………………………………21

*Bartholomew v. Northampton Nat'l Bank of Easton, Pennsylvania*
    584 F.2d 1288, 1293–1294 (3rd Cir.1978)…………………………………44

*Bonds v. Owens-Corning Fiberglas Corp.*
    201 F.3d 815 (6th Cir. 2000)……………………………………………..27

*Bryant v. Aiken Reg'l Med. Centers, Inc.*
    333 F.3d 536, 543 (4th Cir. 2003)…………………………………16, 17, 20

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*
    511 U.S. 164, 191 (1994)…………………………………………..42, 43, 44

*Cline v. Wal-Mart Stores*
    144 F.3d 294, 301 (4th Cir. 1998)…………………………………….16, 17

*Collins v. Sigmon*
    299 S.C. 464, 467, 385 S.E.2d 835, 837 (1989)……………………………37

*In re Crews*
    389 S.C. 322, 698 S.E.2d 785, 794 (S.C.2010)……………………….…41

*Crinkley v. Holiday Inns, Inc.*
    844 F.2d 156, 160 (4th Cir. 1998)…………………………………………..16

*Dennis v. Columbia Colleton Med. Ctr.*
    290 F.3d 639 (4th Cir. 2002)……………………………………………..16

*Dilmar Oil Co. Inc., v. Federated Mut. Ins. Co.*
    986 F.Supp. 959, 980 (D.S.C.1997)……………………………….…47

*Drager v. PLIVA USA, Inc.*
    741 F.3d 470, 474 (4 Cir. 2014)……………………………………....…46

*Foman v. Davis*
    371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)……………...……46

*Gibbes v. Rose Hill Plantation Development Co.*
    794 F.Supp. 1327 (D.S.C. 1992)………………………………...……44

*Gilliland v. Elmwood Properties*
    301 S.C. 295, 300-01, 391 S.E.2d 577, 580 (1990)……………………17, 18

*Gouding v. St. Francis Xavier Hospital*
    326 S.C. 248, 487 S.E. 596 (1997)………………………………………17

*Hammar v. Cost Control Marketing and Sales Management, Inc.*
    757 F.Supp. 698, 706 (W.D. Va. 1990)………………………………45

*Hardin v. Skee Venture, Inc.*
    50 F.3d 1291, 1294 (4th Cir. 1995)………………………………………28

*Henderson v. Kibbe*
    431 U.S. 145, 153 n. 10 (1977)………………………………………….28

*Hennes v. Shaw*
    397 S.C. 391, 725 S.E.2d 501 (Ct.App.2012)…………………….....…40

*Insurance Financial Services, Inc. v. South Carolina Ins. Co.*
    275 S.C. 155, 160, 268 S.E.2d 113, 116 (1980)……………………………37

*Jefferies v. Phillips*
    318 S.C. 523, 527, 451 S.E.2d 21 (Ct. App. 1994)………………...……33

*Judy v. Judy*
    393 S.C. 160, 712 S.E.2d 408, 414 (S.C.2011)……………………….…41

*Kemmerlin v. Wingate*
    274 S.C. 62, 261 S.E.2d 50 (1981)……………………………………17

*Kemp v. Peterson*
　　940 F.2d 110, 113 (4th Cir. 1991)…………………………………………44, 45

*Kremer v. Chem. Constr. Corp.*
　　456 U.S. 461, 466 (1982)……………………………………...……………41

*Laber v. Harvey*
　　438 F.3d 404, 428 (4th Cir. 2006)…………………………………….…49

*Lawlor v. National Screen Serv. Corp.*
　　349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)………………...……37

*Mackey v. Frazier*
　　234 S.C. 81, 106 S.E.2d 895 (1959)…………………………………...……36

*Montgomery v. Anne Arundel County*
　　Nos. 05-1267, 05-1314, 2006 WL 1194308, at *5 (4th Cir. 2006)…...……47

*Morgan v. Self Regional Healthcare*
　　2010 WL 5019974, 6 (D.S.C. 2010)…………………………...……47, 48

*Mylan Labs., Inc. v. Matkari*
　　7 F.3d 1130, 1134 (4th Cir.1993)…………………………………...………35

*Noel v. Artson*
　　641 F.3d 580, 586-87 (4th Cir. 2011)……………………………….………27

*Nunnery v. Brantley Constr. Co.*
　　289 S.C. 205, 345 S.E.2d 740 (Ct.App.1986)……………………...………37

*Perrin v. O'Leary*
　　36 F.Supp. 2d 265 (D.S.C. 1998)…………………………………...………21

*Pittston Co. v. U.S.*
　　199 F.3d 694 (4th Cir. 1999)……………………………………...………45

*Plott v. Justin Enterprises*
　　374 S.C. 504, 511, 649 S.E.2d 92, 95 (Ct. App. 2007)……………….…38

*Plum Creek Dev. Co., Inc., v. City of Conway*
    334 S.C. 30, 512 S.E.2d 106, 108 (S.C.1999)……………………....……41

*Private Mortg. Inv. Services, Inc. v. Hotel and Club Associates, Inc.*
    296 F.3d 308 (4th Cir. 002)…………………………………………....……20

*Resolute Ins. Co. v. State of N.C.*
    397 F.2d 586, 589 (4th Cir. 1968)………………………………..……40

*RFT Management Co., LLC v. Tinsley & Adams, LLP*
    399 S.C. 322, 732 S.E.2d 166 (2012)……………………………3, 21, 37, 39

*Robertson v. First Union Nat'l Bank*
    350 S.C. 339, 565 S.E.2d 309 (Ct. App. 2002)……………….…………33

*Scott v. Family Dollar Stores, Inc.*
    733 F.3d 105, 121 (4th Cir.2013)…………………………………………..46

*Sloan v. CSX Transp., Inc.*
    616 F.3d 380, 388 (4th Cir. 2010)……………………………..……49

*Smith v. Haynsworth Marion McKay & Guirard*
    322 S.C. 433, 472 S.E.2d 612 (1996)………………………………………17

*Spell v. McDaniel*
    824 F.2d 1380, 1395 (4th Cir. 1987)……………………………...……28

*S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.*
    318 F.3d 592, 595 (4th Cir. 2003)……………………………….……49

*Stamathis v. Flying J*
    389 F.3d 429, 436 (4th Cir. 2004)………………………………....…21

*Taylor v. Knoxville Trucks, Inc.*
    2010 WL 3951505, 4 (D.S.C. 2010)………………………………48-49

*Teague v. Bakker*
    35 F.3d 978 (4th Cir. 1994)……………………………………………27

*Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*
      351 S.C. 459, 570 S.E.2d 197 (Ct. 2002)……………………………....…17

*United States v. Lighty*
      616 F.3d 321, 366 (4th Cir. 2010)…………………………………....27

*U.S. v. Bryan*
      58 F.3d 933, 945 (4th Cir. 1995)……………………………………43

*Vista Del Mar Condominiums, LLC v.*
*Nichols Brosch Wurst Wolfe & Associates, Inc.*
      2013WL 625455 (D.SC 2013)……………………………………….…18

*Wilkins v. Montgomery*
      751 F.3d 214, 220 (4th Cir.  2014)………………………………….49

*Williams v. Union Carbide Corporation*
      790 F.2d 582 (1986)……………………………………………....…27

## STATUTES AND REGULATIONS

15 U.S.C.A. Section 78(j)……………………………………………………42
15 U.S.C.A. § 1719……………………………………………………...…46
Rule 10b-5, 17 C.F.R. Section 240.10b-5………………………………...42

## RULES

Fed. R. Civ. P. 50(b)………………………………………………………16
Fed. R. Evid. 403…………………………………………………………27
Fed. R. Evid. 801(d)………………………………………………………27
Fed. R. Civ. P. 51……………………………………………………...28, 30
Fed. R. Civ. P. 41(b)………………………………………………………37
Fed. R. Civ. P. 16(b)………………………………………………………47
Fed. R. Civ. P. 15(a)(2)…………………………………………………46, 47

## JURISDICTIONAL STATEMENT

Appellees accept Appellant's Jurisdictional Statement.

## STATEMENT OF ISSUES

I.    Did the District Court err in refusing to grant RFT's Motion for Judgment As A Matter of Law when the jury found for John Powell and Professional Appraisal Service and there was more than sufficient evidence to support the jury's decision?

II.   Did the District Court correctly deny RFT's Motion for a New Trial when there were no errors regarding the admission of evidence or the charge to the jury?

A.    Evidentiary Rulings:

1. Did the District Court err in limiting RFT's use of the Uniform Standards of Professional Appraisal Practice when there was no testimony that the standards were violated?

2. Did the District Court err in excluding appraisals of Lots 14 and 31 when the admission of such evidence was irrelevant?

3. Did the District Court err in admitting the testimony of Welborn Adams when Adam's testimony directly contradicted Plaintiff's claims and was evidence of admission by Plaintiff against its interest?

B.    Jury Charges:

1. Did the District Court correctly refuse to charge RFT's Supplemental Request to Charge No. 17, when RFT failed to make timely objection and when such a charge would have been erroneous?

2. Did the District Court's charge on SCUPTA adequately inform the jury of the controlling legal principles?

3. Did the District Court correctly charge comparative negligence when there was sufficient evidence of negligence on the part of

1

RFT for the jury to have considered comparative negligence had it found Powell to be negligent?

III.   Did the District Court correctly dismiss RFT's claims under SCUTPA, South Carolina Uniform Securities Act, and civil conspiracy in light of RFT's prior suit in state court?

IV.   Was the District Court correct in dismissing RFT's causes of action for violation of the Federal Securities Laws and the Interstate Land Sales Act as the law is clear that there is no cause of action for aiding and abetting a violation of those statutes?

V.    Was the District Court correct in denying RFT's Motion to Amend Its Complaint in light of the fact that RFT had over three years involvement with these matters, and that its proposed Amended Complaint added no new facts?

## STATEMENT OF THE CASE

RFT brought this action against John D. Powell ("Powell"), Professional Appraisal Service, Inc. ("PAS"), Welborn D. Adams and Tinsley & Adams, LLP ("Adams" and collectively "Attorneys"), among others, for damages allegedly resulting from the loss of two lots RFT purchased in a lakeside development on Lake Greenwood, South Carolina.   RFT's Complaint alleged cause of action against Attorneys and Adams for violation of the Interstate Land Sales Act, violation of state and federal securities laws, violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), and conspiracy.   The Complaint alleges causes of action against Powell and PAS for violations of state and federal securities law, violation of SCUTPA, fraud and deceit, and negligence (JA 7).

2

RFT previously sued Attorneys in the Court of Common Pleas for Greenwood County, South Carolina alleging the exact same facts and allegations arising from the same transaction and occurrence for the same damages. In that case, RFT brought claim against Attorneys for legal malpractice, breach of fiduciary duty, as well as the same South Carolina Uniform Securities Acts and violations of unfair trade practices claims alleged in this suit. The trial judge in RFT's state court case directed a verdict for Attorneys for all claims with exception of legal malpractice. The jury returned a verdict in favor of the Attorneys on that cause of action, which RFT appealed to the South Carolina Supreme Court, which affirmed the judgment. *RFT Management Co., LLC v. Tinsley & Adams, LLP*, 399 S.C. 322, 732 S.E.2d 166 (2012).

Attorneys moved to dismiss RFT's federal claims on the basis of issue preclusion as a result of the state court suit (JA 48). In May 2011, then-District Judge Henry F. Floyd granted Attorneys' motion in part, holding that RFT's claims for violation of the South Carolina Uniform Securities Act, violation of the SCUTPA, and the claim for civil conspiracy were precluded by the judgment in the South Carolina state courts (JA 53). In its Order, the Court suggested that RFT's Complaint failed to state a claim pursuant to the Securities Act of 1934 and requested Attorneys rebrief the dismissal of the Interstate Land Sales Act, applying federal as opposed to state law on issue preclusion. Attorneys filed a second

3

motion to dismiss on May 27, 2011 (JA 65), and Powell and PAS filed a similar motion on June 17, 2011 (JA 94). These motions argued that there was no aider and abettor liability under the Interstate Land Sales Act and the federal securities act. Attorneys also argued that pursuant to federal law governing issue preclusion, RFT's claims under the Interstate Land Sales Act should be dismissed. In response, RFT moved to amend its Complaint subsequent to the expiration of the scheduling order to add direct claims under the Interstate Land Sales Act and federal securities act against Attorneys and appraiser, without alleging any new or different facts to support those claims. The Honorable Timothy M. Cain dismissed the remaining claims against Attorneys as well as the Interstate Land Sales Act and Federal Securities Act claims against Powell and PAS, and denied RFT's motion to amend (JA 96).

The matter proceeded to trial against Powell and PAS on RFT's claims of negligence, fraud, and violation of the SCUTPA. On September 11, 2013, the jury found for Powell and PAS, on all causes of action.

## STATEMENT OF FACTS

RFT is a limited liability company, with the original members being David Roatch ("Roatch") and his mother. After his mother died, Roatch became the only member of the LLC. RFT managed assets and investments for the Roatch Family Trust, and Roatch became its manager in 2006 (JA 163, 164). RFT made a number

4

of investments in commercial real estate, apartments, and mortgage pools.  RFT lent money to commercial real estate developers who then lent money to others (JA 164-165).  Roatch was a sophisticated investor (JA 220).

Planters Row at Palmetto Crossing ("Planters Row") was a residential development on the shores of Lake Greenwood in Greenwood County, South Carolina (JA 201, 211).  Planters Row was developed by Lake Greenwood Developers ("LGD"), which was managed by William Gilbert (JA 200).  Palmetto Crossing was a unique development for Lake Greenwood (JA 166).  The lots were small and the houses were intended to be 2-3 story Charleston-style homes.  No lot had direct access to water; however, a marina was planned, as were various other amenities.  Lots had been sold, and the advertised amenities were being put into place (JA 211, 212).

Roatch was introduced to Palmetto Crossing by Jan Bradshaw, a real estate agent, who worked for a third-party real estate company.  Roatch was attracted by the proposed infrastructure, amenities and potential of the project (JA 153).  He looked at other developments around Lake Greenwood.  Ultimately, on behalf of RFT he contracted to buy two lots (28 and 31) at Planters Row.  The sale closed on October 30, 2007, and was closed by Greenwood attorney Adams.

The contracts provided that RFT could rescind if the lots did not appraise at or above the contract price.  RFT had the option to choose its own appraiser; yet

5

did not do so (JA 194). Jan Bradshaw contracted with Powell, who at the time was affiliated with PAS, to do the appraisals. Powell was paid $500.00 for two land appraisal reports. Both reports had an effective date of October 10, 2007. The reports were delivered to Roatch approximately two weeks prior to closing. Roatch spent between fifteen minutes to an hour reviewing the appraisals "very carefully" (JA 181). Roatch never contacted Powell or PAS regarding the appraisals (JA 179-180).

As part of its purchase, RFT through its attorney, Joe Maddox, negotiated a buyback agreement with LGD on each of the lots (JA 63; 443). The buyback agreement provided that at purchaser's sole option, LGD would buy back the lots after two years at a return of between 32-33% (JA 64). Roatch acknowledged that the prime rate of interest in 2007 was at most 6% (Id.). RFT had no intention of building on the property.

In addition to the buybacks, RFT negotiated a second mortgage on the remaining 21 unsold lots in Planters Row (JA 152). After closing, RFT had a buyback agreement with LGD on Lots 28 and 31 and a second mortgage on the remaining 21 unsold lots.

LGD had a $1.75 million dollar loan to complete the infrastructure. The loan was secured by a first mortgage on the property, which had an appraised value of $4.4 million (JA 218). LGD had prepaid the interest on the loan for calendar

6

year 2007.  The loan was current, and work on the infrastructure was continuing at the time of the appraisals (JA 216).  In 2008, the real estate market at Lake Greenwood and throughout the country collapsed.  No developments on Lake Greenwood, including LGD, survived the real estate market crash (JA 217).  LGD went out of business; was unable to complete the planned infrastructure and amenities at Planters Row; and was unable to fulfill its buyback agreement with RFT (JA 220).

Roatch was RFT's first witness.  He testified that despite the fact that he negotiated buybacks on his two lots, he would not have closed these transactions had he known either:  (1) LGD had offered buybacks to other individuals, or (2) LGD did not own Lots 28 and 31 when it contracted to sell to him (JA 169, 172, 173).  Roatch testified that had he even a "whiff" that LGD did not own the properties, he would have walked away from the transaction, even at closing (JA 173).  He testified the presence of other buybacks would have indicated financial instability of LGD; however, Roatch never asked LGD for any financial information of any kind (JA 220, 221).

Roatch knew of other buyback offers, but denied his knowledge.  Jan Bradshaw advised Roatch of other buybacks in an email sent to him on September 21, 2007, prior to RFT contracting to buy the lots (JA 171; 552).

7

LGD has previously sold Lots 28 and 31 to Christopher and Susan Grimshaw ("Grimshaws") and Douglas Robertson ("Robertson"), respectively. LGD was fulfilling its buyback payments to the Grimshaws and Robertson by selling the lots to RFT. Powell's appraisals advised Roatch that RFT did not own the lots.[1] In addition, Welborn Adams provided a title opinion letter to Roatch and RFT. This letter indicated that in order for LGD to convey good title to RFT, LGD would first have to obtain the lots from Robertson and the Grimshaws (JA 550-551).

RFT proffered O. Marshall Dodds, a real estate appraiser from Columbia, South Carolina, as its expert witness. Dodds expert disclosure consisted simply of a retrospective appraisal of Lots 28 and 31. At his deposition, Dodds testified he did not intend to offer any opinions as to any violation of the standard of care by Powell or PAS. Powell and PAS then moved for summary judgment (JA 121). RFT's response was a belated affidavit by Dodds, which included opinions that Powell and PAS violated the standard of care (Dkt. #201). The district court issued an order which denied defendants motion of summary judgment (JA 128-133). The Court took note of Dodds belated affidavit and ruled it "a sham." The Court limited Dodds testimony at trial to the content of his original expert report.

---

[1] The appraisal on Lot 28 disclosed that it was sold to the Grimshaws on March 28, 2006, for $235,000.00, and that the Grimshaws still owned the lot (JA 453-461). Powell's appraisal on Lot 31 reflects it was sold to Robertson on April 14, 2006, for $235,000.00, and that Robertson was still the current owner (JA 463-471).

*Id*. As a result, there was no expert testimony that Powell's actions or appraisals violated any applicable standard of care.[2]

Powell testified he was familiar with Planters Row. He explained to the jury the process by which a land appraisal report is prepared. He visited the property, familiarized himself with Lots 28 and 31 (subject lots) as well as other lots within the subdivision whose sales and pricing he considered when forming his opinion as to the value of the subject lots (comparable sales). An appraiser uses a process of adjustment wherein he reviews a property which has a known sales price and adjusts for the differences in size, shape, view, etc. in order to validly compare a comparable or comparables with the subject property.

Powell explained that an appraiser is required to adjust for any dissimilarities between a comparable property and the subject property. If the comparable property is superior to the subject property, the appraiser must adjust the sales price of the comparable property downward. If the comparable property is inferior, then the appraiser must adjust the sales price upward (JA 303-304). Lot 41 sold for $299,500 in September 2006. It had a superior water view to the subject lots; therefore, Powell made a downward adjustment of $25,000 which was reflected on his appraisal (JA 243). Powell also made an upward adjustment of

---

[2] As discussed *infra.* at 18, there is no testimony in that Powell's actions or appraisals were negligent, or improper, or in any way materially violated the Uniform Standards of Professional Appraisal Procedures (USPAP).

$10,000 as Lot 41 was smaller than the subject property. The $10,000 positive adjustment and the $25,000 negative adjustment resulted in an adjusted sales value for Lot 41 of $284,500 (JA 305-306).

Similar adjustments were made for comparable #2 (Lot 46), which sold for $350,000. It had a superior water view. Powell made a downward adjustment of $50,000 to adjust for the better view. He then adjusted for the fact that Lot 46 is smaller (+$10,000), resulting in a net adjustment of minus $40,000 for an adjusted value of $310,000 (JA 306-307).

Lot 44 sold for $300,000. It had a superior water view but was smaller than the subject property. This resulted in a net adjustment of minus $15,000 or an adjusted price of $285,000 (JA 308).

Powell also used Lot 26 as a comparable. It had a sales date of over 12 months; however, is inferior to the subject property. Powell wanted to include an inferior lot in his comparables. His appraisal noted this sale was over 12 months old (JA 454). This lot sold for $235,000, but had an inferior water view and less acreage. In order to adjust it to the subject property, Powell upwardly adjusted the sales price of this inferior lot by $55,000, for a value of $290,000 (JA 308-310).

Powell's appraisal reflected adjusted values for the comparable sales of $284,500, $310,000, $285,000, and $290,000. Powell opined that Lot 28 was worth $290,000, in the middle of the indicated market value range (JA 453).

Powell performed a similar process with Lot 31, which he valued at $285,000 (JA 314, 463).

The appraisals also disclosed that as of October 10, 2007, the owners of the properties were the Grimshaws and Robertson (JA 456, 466).  If Roatch had read the appraisals as he claimed, he would have known LGD did not own the lots it was to sell to him.[3]  Reference to Page 5 of both reports indicates that the lots were sold on the date indicated to the present owners Grimshaw and Robertson (JA 456, 466).[4],[5]

Powell investigated the pricing, dates of sale and types of sales regarding the comparables by utilizing the Multiple Listing Service ("MLS") and the Geographic Information System ("GIS").  The MLS is a comprehensive listing of properties sold in a particular area.  The GIS reflects the same information available in the Register of Deeds ("ROD") office in Greenwood County.  The sales price of a real

---

[3] The same pages of the appraisals reveals the phrase "the subject has not sold for the past three years, 3-29-06, FPR, $235,000" was a typographical error (JA 312). Powell testified that the word "not" should not have appeared and the word "FPR" should be "FOR."  Thus the correct phraseology would be "the subject sold in the past three years 3-29-06 for $235,000."

[4] Powell was provided the contract sales price on both lots and disclosed it on the appraisals (JA 453, 463).  The appraisals also reflect that Powell was not given a copy of the contract (JA 311, 461, 471).

[5] Powell testified it was not necessary for him to know the name of either the buyer or the seller to do a land appraisal report.  Contrary to the assertions by RFT (Brief at 7), the appraisals do not indicate that the seller is LGD.  The appraisals list LGD as the lender/client (JA 453, 463).

estate transaction is often reflected in an affidavit of fair consideration. The affidavits of fair consideration are signed by the seller and do not reflect real estate sales concessions (JA 214, 215).

Powell testified that both the GIS and MPS described the sales to Grimshaw and Robertson as valid sales (JA 313). Gilbert testified he signed the affidavit of true consideration, and that he used the sales price as the true consideration. This affidavit was on file in the ROD office (JA 214, 215). Given the listing of the sales as a "valid sale" Powell had no reason to believe otherwise, and there is no contrary testimony.

Powell also testified during his investigation he observed the infrastructure and amenities being constructed. He had no reason to believe the amenities would not be completed as advertised. This is consistent with Gilbert's testimony (JA 216). The appraisals state that Powell's valuation was based on the assumption that the amenities would be completed (JA 315, 453, 463).

Powell testified he was not required to do any investigation of the sales history of the comparables (JA 234). He also testified that based on the MLS listings, he reflected the growth rate as "steady" (JA 453, 463). This testimony is consistent not only with that of RFT's witness William Gilbert (JA 204), but with that of Roatch himself (JA 184). The fact that there had been no resale in a subdivision that was 18 months old is of no moment whatsoever. Furthermore,

Powell testified that his research disclosed that the four comparables he used were on the market for 30 days or less (JA 245).[6]

## SUMMARY OF ARGUMENT

RFT brought this case against Powell and PAS alleging negligence, fraud, and violation of South Carolina Unfair Trade Practices Act. South Carolina law requires the expert testimony on the issue of professional negligence. RFT presented no expert testimony that Powell's actions violated any professional standard applicable to appraisers. Despite this lack of expert testimony, the district court allowed the jury to decide all three causes of action. The jury found for Powell.

The district court allowed RFT's counsel significant latitude in questioning Powell about his appraisals, his analysis and his process. Powell provided the bases for his appraisals and explained his methodology. The district court admitted certain portions of the Uniform Standard of Professional Appraisal Practice ("USPAP") in evidence.

RFT is not entitled to judgment as a matter of law on its SCUPTA claim. The evidence presented by RFT on its negligence cause of action was the same evidence it relied upon for its SCUPTA cause of action. Under South Carolina

---

[6] Powell testified that lots in Planters Row began to be released for sale in late 2005 and 2006 and that there were three homes built in the subdivision as of October 10, 2007, the date of his appraisals (JA 314).

13

law, the jury finding no negligence would have precluded a finding of in favor of RFT on its SCUPTA cause of action.  Regardless, the jury heard the evidence and RFT was not entitled to a motion for judgment as a matter of law on its SCUPTA cause of action.

RFT is not entitled to a new trial, inasmuch as the trial court did not abuse its discretion in its evidentiary rulings, and the court's charge adequately informed the jury of the relevant law.  The court correctly refused RFT's proffered charge on USPAP.  RFT did not object to the court's failure to give this charge and the refusal to give the charge was not plain error.

RFT presented no expert testimony that Powell violated any provision of USPAP.  Nevertheless, the court admitted portions of USPAP as evidence, and gave Powell great latitude in questioning Powell about its provisions and his complaints therewith, as well as charging the jury that it need not rely on expert testimony to find Powell negligent.

Likewise, the court did not err admitting in evidence other appraisals done by Powell of lots at Planters Row.  These appraisals were not at issue in this matter and RFT's complaint regarding these appraisals were the same complaints about which RFT questioned Powell.

The trial court did not err in allowing the testimony of Adams.  Adams was the attorney who closed RFT's purchase of the lots in question.  Adams testimony

14

was limited by the trial judge.  Adams testimony as to his disclosures to RFT's president, David Roatch, directly contradicted Roatch's testimony.  Adams testimony was relevant to the issue of Roatch's own negligence, as well as the proximate cause of RFT's damages.  The trial court also correctly allowed Adams to testify that RFT had accused him of the same misconduct and damages he claimed against Powell.  The trial court correctly ruled that evidence of such accusations was an admission against RFT's interest.

The trial court charged the jury on the comparative negligence.  Roatch testified that certain conditions would have made him not close on the property. Powell and PAS presented testimony that those very conditions were made known to Roatch, yet Roatch closed the property.  This testimony was evidence of Roatch and RFT's negligence.  The jury did not reach the issue of comparative negligence, as it found the Defendants not to be negligent; nevertheless, the evidence supported a comparative negligence charge.

The trial court properly dismissed the claims against the Attorneys for violation of state securities laws and SCUTPA, since these claims were previously litigated.  The trial court correctly concluded that RFT's claims for civil conspiracy could have been included in its suit in state court.  Furthermore, RFT's claims for aider and abetter liability under the Interstate Land Sales Act and Federal Securities Act fails to state a claim under those Acts.  The court was within its

discretion to refuse to allow RFT to amend at a point and time after it had litigated its claims in state court.

## ARGUMENT

## I. PLAINTIFF WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS UNFAIR TRADE CAUSE OF ACTION.

Plaintiff renewed its motion for judgment as a matter of law after the entry of judgment (Fed. R. Civ. P. 50(b)). An Appellate Court reviews a trial court's ruling on a judgment as a matter of law *de novo*. *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639 (4th Cir. 2002). Under Rule 50(b), "the question is whether a jury, viewing the evidence and the light most favorable to (the nonmoving party) could have properly reached the conclusion reached by (the jury)." *Bryant v. Aiken Reg'l Med. Centers, Inc.*, 333 F.3[rd] 536, 543 (4th Cir. 2003) (internal quotations and citations omitted). A court may grant a motion under 50(b) only "if there is no legally sufficient evidentiary basis for a reasonable jury to find for the (nonmoving) party." *Cline v. Wal-Mart Stores*, 144 F.3[rd] 294, 301 (4th Cir. 1998) (internal quotations and citations omitted). In deciding a Rule 50(b) motion, the evidence and all reasonable inferences from it are assessed in the light most favorable to the nonmoving party and the credibility of all evidence favoring the nonmoving party is assumed. *Crinkley v. Holiday Inns, Inc.,* 844 F.2d 156, 160 (4th Cir. 1998) (internal quotations and citations omitted); In deciding the motion, a court is not permitted to retry factual findings or credibility determination, and if

16

there was evidence upon which a jury could reasonably return a verdict, the motion for judgment of law must be denied. *Cline* 144 F.3d at 301. If reasonable minds could differ about the result, the court must affirm the jury's verdict. *Bryant* 333 F.3d at 543.

Throughout this case, Powell and PAS maintained that this matter should not go forward due to the lack of any expert testimony that Powell's actions were violative of any standard of care attributable to real estate appraisers or were in any way misleading. South Carolina law requires such testimony, which could only come from an expert witness in the area of real estate appraisals.

In a professional negligence case, expert testimony is required to establish both the standard of care and the defendants' failure to conform to the standard. *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 351 S.C. 459, 570 S.E.2d 197 (Ct. 2002). In any malpractice case "there can be no finding of negligence in the absence of expert testimony to support it." *Gilliland v. Elmwood Properties*, 301 S.C. 295, 300-01, 391 S.E.2d 577, 580 (1990).

South Carolina courts have applied this standard to accountants (*Kemmerlin v. Wingate*, 274 S.C. 62, 261 S.E.2d 50 (1981); the collection and processing of blood for transfusion (*Doe* supra.); engineers (*Griffin* supra.); attorneys (*Smith v. Haynsworth Marion McKay & Guirard,* 322 S.C. 433, 472 S.E.2d 612 (1996); hospitals (*Gouding v. St. Francis Xavier Hospital*, 326 S.C. 248, 487 S.E. 596

17

(1997); architects (*Gilliland* supra.); and mechanical engineering (*Vista Del Mar Condominiums, LLC v. Nichols Brosch Wurst Wolfe & Associates, Inc.*, 2013WL 625455 (D.SC 2013)); as well as others.  Similarly, an action against a real estate appraiser requires expert testimony both as to the standard of care and any violation thereof.  RFT's complaint alleged that Powell and PAS were negligent in their selection of the comparables utilized in the appraisal, as well as alleging negligence in the valuation of the property and the overall appraisal. Questions surrounding which comparable properties to select, as well as the values placed on the comparables and on the appraised lots are subjects requiring special training. Such issues are beyond the common knowledge and experience of the average juror.

In its factual recitation and argument, RFT provides a laundry list of issues it deems deceptive (steady growth rate, steep discounts, selection of comparables, etc.) (Brief at 6-10).  Each of these issues was addressed by Powell in his testimony.[7]  His testimony contained his explanation of the issue of "neighborhood."  He explained that Planters Row was a relatively new subdivision and the lack of resales was no moment.  He detailed how he reached his decision as to which comparables to select and how he arrived at his valuation for the lots.

---

[7] RFT called Powell as a witness in its case-in-chief.

There was no testimony that Powell was or should have been aware of any discounts, buybacks, or other special considerations which may have been given by LGD to purchasers other than RFT. William Gilbert testified that at the time the appraisals were done and the lots purchased, Planters Row was current on its construction loan and was putting the infrastructure in place (JA 216).

O. Marshall Dodds ("Dodds"), Plaintiff's expert real estate appraiser, testified that an appraisal is an opinion of value of a particular piece of property at a particular point and time, and that different appraisers can have different opinions on the value of the same piece of property (JA 270). In doing a retrospective appraisal of Lots 28 and 31, Dodds had a different opinion of value than did Powell; however, he did not testify that Powell's appraisals were inaccurate or that they were not formulated with due care. Defendant presented Joel Norwood as its expert appraiser. Mr. Norwood also did an expert appraisal of Lots 28 and 31. His opinion of the value of these lots as of the date of Powell's appraisals was similar in value to Powell's (JA 326-331).

The Court found the matter was an issue for the jury and the jury decided against the Plaintiff. There was more than sufficient evidence to support the jury's verdict. RFT was not entitled to judgment in its favor at the conclusion of the

evidence or after the jury's verdict. It is not entitled to a reversal now.[8] See *Bryant v. Aiken Reg'l Med. Centers, Inc., supra.*

As this Court recognized in *Private Mortg. Inv. Services, Inc. v. Hotel and Club Associates, Inc.*, 296 F.3d 308 (4th Cir. 2002), even an appraisal which is materially inaccurate, but which was formulated with due care is no basis for a cause of action against an appraiser under South Carolina law. There is no evidence that Powell's appraisals were not formulated with due care, and the jury did not find that the appraisals were materially inaccurate. Thus, the record forecloses a finding of negligence against Powell, but also forecloses a finding against him under the SCUTPA. The Court in RFT's state court case against Adams and Attorneys directed a verdict in their favor on RFT's cause of action for unfair trade practice, ruling that the unfair trade practice statute did not apply to Attorneys. In turning aside RFT's appeal, the South Carolina Supreme Court noted that the trial court was in error in finding the SCUTPA is not available against the legal profession. Yet, because "RFT alleged the same facts for its UTPA claim as in the legal malpractice claim, i.e. the deceptive acts of law firm

---

[8] The only credible testimony as to the proximate cause of RFT's loss came from William Gilbert. Gilbert testified that at the time RFT purchased the lots, LGD was current on its loan, was continuing to put infrastructure in place, and indeed had a sale subsequent to RFT's purchase. RFT lost its money due to LGD's inability to comply with its buyback obligations. Gilbert testified LGD's inability to fulfill this obligation was due to one reason: The collapse of the real estate at Lake Greenwood and nationally (JA 217). The evidence as to proximate cause was at worst conflicting, and at best directly opposite the position of RFT.

which a jury has already rejected, RFT has not shown it could have established all the necessary elements of this claim." *RFT Management Co., LLC v. Tinsley & Adams, LLP*, 732 S.E. at 174-175 (2012). The same result follows here. The facts relied upon by RFT to establish its negligence claim are indistinguishable from the facts used in attempting to establish its SCUTPA claim. The jury rejected RFT's negligence claim, and by law, its SCUTPA claim fails.

## II.  THE DISTRICT COURT CORRECTLY DENIED RFT'S MOTION FOR A NEW TRIAL.

The decision to grant or deny a new trial is within the sound discretion of the district court. A district court's denial of a motion for a new trial "rests with the sound discretion of the trial judge and will not be reversed absent an abuse of discretion." *Stamathis v. Flying J*, 389 F.3d 429, 436 (4th Cir. 2004). A trial court should set aside the verdict and order a new trial only if (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice. *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587 (4th Cir. 1996). In considering a motion for a new trial, the court must view the evidence in light most favorable to the prevailing party. *Perrin v. O'Leary*, 36 F.Supp. 2d 265 (D.S.C. 1998) "Such a motion should be denied unless there were substantial errors in evidentiary rulings or jury charges or unless 'the evidence, together with all inferences that can be reasonably drawn therefrom, is so one-sided that reasonable people could not disagree on the

verdict'" Id. (internal citations omitted).  RFT has not remotely come close to meeting this standard.

### A.    EVIDENTIARY RULINGS:

### 1.    The Court correctly limited RFT's use of the Uniform Standards of Professional Appraisal Practice.

Plaintiff complains the Court did not allow him to question Powell regarding certain portions of the Uniform Standards of Professional Appraisal Practice ("USPAP"), and that the Court did not charge specific sections of USPAP to the jury.[9]  The Court was correct in both decisions.  Over Defendants' objections, the Court admitted portions of USPAP in evidence (JA 264).  The interpretation of the requirements and standards of a professional appraiser must be done by expert testimony.[10]

The District Court ruled that the jury could decide whether an appraiser should have utilized lots adjoining the lots being appraised as comparables.  The Court allowed RFT's counsel significant latitude in questioning both Powell and his expert Joel Norwood regarding the selection of comparables, the concept of neighborhood, support for assumptions, analysis of special sale concessions, etc.  The questions propounded by Plaintiff's counsel were all directed to certain portions of USPAP (JA 228-230, 254, 255, 258, 259).  The Court admitted those

---

[9] Addressed further at 29, *infra*.

[10] See discussions *supra*. at 18.

portions of USPAP, which Plaintiff's counsel utilized in formulating his questions to Powell and Norwood. In addition, the Court charged the jury that it could find professional negligence without expert testimony where the subject matter is of common knowledge and experience. The jury found for Powell. No error was committed.

### 2. The District Court did not err by excluding the appraisals of Lots 14 and 41.

RFT proffered Powell's appraisals on Lots 14 and 41. These appraisals had no relationship to this case. The trial court correctly ruled that evidence of other appraisals had no relevance absent expert testimony that the appraisals did not comply with the standard of care for a real estate appraiser. There was no testimony that the appraisals were in any way deficient. The Court granted RFT's counsel great latitude in questioning Powell regarding USPAP and the specifics of his appraisals concerning Lots 28 and 31. The Court correctly declined to provide similar latitude to RFT's counsel regarding appraisals on two unrelated lots. A review of RFT's proffer discloses that its complaints about the appraisals for Lots 14 and 41 were the same as RFT's complaints about the appraisals of Lots 28 and 31 (JA 277-279). As such, admission of the appraisals would have been cumulative.

RFT now argues that the appraisals should have been admitted as evidence of effect on the public interest and potential for repetition. Yet, RFT contends that

Powell's allegedly erroneous appraisals of Lots 28 and 31 "clearly satisfied" the potential for repetition element of the Unfair Trade Practices Act. Thus, the admission of the additional appraisals would be cumulative, and there is no evidence that it would in any way have changed the jury's verdict.

### 3. The Court properly admitted the testimony of Welborn Adams.

Adams closed the sale of Lots 28 and 31 for RFT. RFT sued Adams and his law firm for malpractice in South Carolina state court, alleging they caused the same losses he claimed in this matter. Adams testimony was relevant to directly contradict claims made by David Roatch, and as an admission against RFT's interest.

Roatch testified that had he known about buybacks offered to other investors by LGD, he would have backed away from this deal (JA 169, 172, 173). He also testified that if he had even gotten a "whiff" that LGD was not the present owner of Lots 28 and 31, he would have backed away from the deal even at closing (JA 173). When presented with Adams title opinion letter, Roatch denied that Adams discussed the present ownership of the lots with him (JA 176).

Adams testified he gave Roatch copies of all closing documents the night before the closing (JA 354). Included in these documents was a copy of the proposed deed and Adams title opinion letter (JA 358). The deed contained a derivation clause, as is required by South Carolina law. A derivation clause

24

advises from whom the seller acquired the property, the date of the deed into the seller, and the deed book and page of the recording in the ROD Office (JA 356). Reference to the proposed deed discloses that the derivation clause reflects that Lots 28 and 31 would be conveyed from Robertson and Grimshaws by deed dated October 30, 2007, the same date as RFT's closing (JA 447).

Adams title opinion letter stated that in order for LGD to convey good and marketable title of Lots 28 and 31 to RFT, LGD would first have to repurchase the properties from Robertson and Grimshaws. Adams testified that he went over the title opinion letter with Roatch at closing.

> Q. All right, sir. Did you give a copy of this or the original of this to Mr. Roatch of RFT management on October 30, 2007?
> A. Yes, sir, I did.
> Q. And when did you give that to him?
> A. I believe it was included in the packet we received the night before. We also went over it at the closing.
> Q. All right. When you say you went over with him at the closing, did you explain to him or tell him about the requirements?
> A. Right. I said this is what's got to happen for you to get good title, showing you these things.
> Q. And the most important one from a title standpoint was?
> A. The deed has got to be done, that's the most important.
> Q. And signed?
> A. And signed and recorded. And signed properly.
> Q. Was there any questions in your mind that you told Mr. Roatch that for Lake Greenwood to give RFT the property they had to get title to it?
> A. No, there's no question about that.

JA 363.

25

Adam's testimony clearly contradicted Roatch. Adams testimony, along with the deed, title opinion letter, email from Jan Bradshaw, and the appraisal reports all reflect the disclosures made to Roatch prior to closing, which all went to the issue of Roatch's own negligence and supported Powell's theory that the only thing Roatch cared about was a 33% return on RFT's investment.

RFT's previous suit against Adams and his law firm claimed they were the cause of the same damages he was claiming against Powell and PAS. The Court did not allow any testimony regarding the lawsuit itself. The only testimony elicted was as follows:

> Q. Did RFT or Mr. Roatch ever accuse you of misconduct as a result of your closing of the purchase and sale of lot 28 and 31?
> A. Yes.
> Q. Did RFT and Mr. Roatch ever accuse you or blame you for the damages that they allegedly incurred because Lake Greenwood Developers could not perform under the buyback agreements for lot 28 and 31?
> A. Yes, sir.
> Q. Okay. Were you accused of being negligent?
> A. Yes, sir.
> Q. Were you accused of being fraudulent and deceptive?
> A. Yes, sir.
> Q. Were you accused of committing an unfair trade practice?
> A. Yes, sir.
> MR. ROE: No further questions.

(JA 365 – 366).

26

The trial court ruled that RFT's allegations against Adams regarding the same transaction and claiming the same damages were an admission against interest (JA 364). Pursuant to Fed. R. Evid. 801(d) such a statement is not heresay. Pleadings in a prior case may be used as evidentiary admissions. *Williams v. Union Carbide Corporation*, 790 F.2d 582 (1986); *Bonds v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815 (6th Cir. 2000) (plaintiffs complaints from prior cases against other defendants sufficiently privative to survive Rule 403 scrutiny). Here, the trial court did not allow evidence that RFT had brought previous suit against Adams, but restricted counsel to asking whether the same allegations had been made. No error was committed.

### B.    JURY CHARGES:

To demonstrate the necessity for a new trial based on the court's refusal to give an instruction, the challenging party has a heavy burden to demonstrate that "the requested instruction '(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired' that party's ability to make its case." *Noel v. Artson*, 641 F.3d 580, 586-87 (4th Cir. 2011) (quoting *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010). A trial court has broad discretion in appropriately instructing the jury. *Teague v. Bakker*, 35 F.3d 978 (4th Cir. 1994). In determining whether instructions are adequate, the Court must look

to "whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1987); *see also Hardin v. Skee Venture, Inc.*, 50 F.3d 1291, 1294 (4th Cir. 1995) ("on review, jury instructions must also be viewed as a whole"). The Supreme Court has instructed that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Henderson v. Kibbe*, 431 U.S. 145, 153 n. 10 (1977).

### 1.    The District Court's refusal to Charge RFT's Supplemental Request to Charge No. 17 was not in error.

RFT complains the Court failed to give its requested supplemental charge 17, yet RFT did not object to the Court's failure to give this charge. Rule 51, Fed. R. Civ. P., requires a party to make a timely objection to an instruction or failure to give and instruct. At the conclusion of the Court's charge to the jury, the following colloquy occurred:

> THE COURT: Are there any objections to the charge as read?
> MR. SWAGART: Yes, your Honor.
> THE COURT: No?
> MR. SWAGART: Yes, your Honor.
> THE COURT: Oh, yes. Okay. All right.
> MR. SWAGART: Your Honor, plaintiff objects to the charge because it omitted plaintiff's supplemental requests to charge 11, 14, 12, 15, 22, ten, and six. In addition, we object to the request to charge on the unfair trade practices on page 18 which we discussed at the charge conference, so I

28

think it's already on the record.
            We object to the giving of the charge of comparative
negligence because, number one, there's no evidence in the
record of any duty owed by the plaintiff to the defendants.
We object to the charge on negligence -- excuse me. We object
to the charge of -- that's all I have your Honor.
            THE COURT: All right. That's all? Okay.

(JA 420-421.)

RFT did not object to the Court's failure to give this requested instruction.

RFT's position on this issue is curious. RFT complains that it did not have

an opportunity to object to the charge before it was given to the jury, yet RFT

acknowledges that the parties were not provided final copies of the jury just before

it was given. RFT neglects to inform this Court that at the preliminary charge

conference the last morning of the trial, the following occurred between RFT's

counsel and the Court:

            MR. SWAGART: The question is is this the time to do
            objections?
            THE COURT: No. The time to do objections really is
            after I do the charge. You can -- I think everybody's on the
            record on these, but I think the best thing to do is know what
            I'm going to say and be able to then say I didn't like it
            because you didn't charge this or that. Okay?
            MR. SWAGART: Right. That's what I thought.

(JA 384.)

Thus, RFT's counsel questioned whether objections should be made before

the charge was given and acknowledged he understood he needed to object <u>after</u>

29

the charge was given.  This is consistent with Fed. R. Civ. P. 51, which provides

that objection is timely:

> **(c)  Objections.**
>> **(2)  When to Make.**  An objection is timely if:
>>> (A)  a party objects at the opportunity provided
>>> under Rule 51(b)(2); or
>>> (B)  a party was not informed of an instruction or
>>> action on a request before that opportunity to
>>> object, and the party objects promptly after
>>> learning that the instruction or request will be,
>>> or has been, given or refused.

RFT was given an opportunity at the conclusion of the case to object to the

failure of the Court to give its requested Charge No. 17, yet did not do so.

Regardless, Charge No. 17 should not have been given.  First, it is a charge

on the facts, which is not permitted.  Secondly, it is a recitation of USPAP.  As

discussed supra. at 9, prior to trial the Court advised counsel for RFT that its expert

would not be permitted to testify beyond the contents of his expert disclosure,

which was his appraisal report.  The Court correctly concluded RFT's expert's

belated attempt to insert violation of USPAP standards by way of an affidavit was

a "sham."  During the course of the trial, the Court was absolutely clear about this.

> In addition to that, your Honor, there's a number of
> cases out there that say whereas we might not be entitled to a
> jury charge on USPAP, USPAP is evidence of duties owed by all
> to those who rely on appraisals. It is evidence of duties.
>     THE COURT: Now, I think what I mentioned to you
> before is I took that to mean evidence of the breach of the
> duty in those standards or any testimony about causation as a
> result. I heard testimony that if he had known who really

30

owned the property he wouldn't have bought it, if he had known
about there were other buyback agreements. There was some
omissions and things that he said if he had known about it we
wouldn't have bought the property. But I haven't heard
anything about standards of appraisers that were breached.

     MR. SWAGART: Well, my client doesn't have to rely on
that. The question here is legally were there duties that
arose from USPAP.

     THE COURT: Right. And there are, it's just have
they been breached and did it cause the problem he complains
of?

     MR. SWAGART: I think on the defendant's own
testimony that the jury can come to the conclusion that Mr.
Powell didn't follow the directives of USPAP.

     THE COURT: I don't think so, because that would not
be -- that's not something that would be in the province of a
lay jury without guidance and expert testimony.

     MR. SWAGART: Well, I'm just --

     THE COURT: That's my view. As I told you before,
the jury might say I think a neighboring property should have
been considered, and if there was evidence to establish that
had that been considered somehow the appraisal would have been
dramatically different, if that happened it would have been
below the purchase price and then would have proven damages,
but none of that's in here. That's my hesitation on that.

(JA 367-368.)

Over defendants' objections, the Court allowed RFT's counsel to question

Powell about certain provisions of USPAP, and the Court allowed USPAP to go to

the jury as an exhibit. As discussed *supra.* at 20, an appraisal is a matter of

subjective judgment and opinion. There was no expert testimony that Powell's

actions were negligent. The Court allowed the jury to consider USPAP along with

RFT's questioning of Powell, but the jury was not entitled to an instruction on

USPAP, as there was no testimony from a knowledgeable expert that (a) USPAP had been violated, and (b) the violation, under these circumstances, was a breach of the applicable standard of care.

### 2. The Court's Charge on Unfair Trade Practices Was Correct.

RFT complains that the Court failed to charge his language regarding literally true statements capable of being deceiving. First, RFT did not preserve its objection to this portion of the charge. A review of the colloquy cited by RFT (JA 371) revealed the discussion took place at the close of the defendants' case and involved Defendants Motion for a Directed Verdict as a Matter of Law. The Court and the parties were not discussing the jury charge. As Plaintiff failed to make a timely objection, this Court need not consider this issue.

The same is true of RFT's complaint that the jury "was instructed that an act or practice could not constitute a deceptive act unless it had an impact upon the market place." Again, Plaintiff to failed to object to this portion of the Court's charge and it is not preserved for review.

Finally, RFT complains that the Court charged the jury: "Further, conduct that affects only the parties involved cannot satisfy the public interest requirement." (Brief at 31.) The Court directly and distinctly instructed the jury on all the elements of South Carolina law. The Plaintiff complains of one sentence in the entire instruction. The Court correctly instructed the jury that the Plaintiff

needed to prove that the Defendants engaged in unfair or deceptive acts or practices that had an impact on the public interest and that the Plaintiff suffered ascertainable damages as a result. The Court informed the jury of the definition of an unfair trade practice, including that "a practice is deceptive when it has a tendency to deceive." (JA 405.) The Court correctly charged the jury that to be actionable, an unfair act or practice must have an adverse impact upon the public interest. The Court informed the jury that if an act or practice has the potential for repetition, it may have an impact on the public and charged that conduct that affects only the parties cannot satisfy the public interest. The Court charged:

> "Expressed differently the Act is not available to address a private wrong when the public interest is unaffected. An impact on the public interest may be shown if the acts or practices have the potential for repetition. Potential for repetition can be demonstrated either by showing the same kinds of actions occurred in the past thus making it likely they will continue to occur absent deterrence or showing the company's procedures created a potential for repetition for the unfair or deceptive act." (JA 405.)

Under South Carolina law, "conduct which only affects the parties of the transaction provides no basis for a UTPA claim." *Jefferies v. Phillips*, 318 S.C. 523, 527, 451 S.E.2d 21 (Ct. App. 1994). This exact phraseology was reaffirmed in *Robertson v. First Union Nat'l Bank*, 350 S.C. 339, 565 S.E.2d 309 (Ct. App. 2002) ("therefore, conduct which only affects the parties to the transaction provides no basis for a UTPA claim") (citing *Jefferies*).

33

The Court instructed the jury that a potential for repetition would satisfy the public interest prong of the South Carolina Unfair Trade Practices Act, no such action could exist.  The charge was correct as a matter of South Carolina law.

In his Order denying RFT's motion for a new trial, the Court found that its instructions "were correct, accurate, and balanced statements of the applicable law which did not mislead or confuse the jury or prejudice the plaintiff."  (JA 582.)  As the Court noted, "even when jury instructions are flawed, there can be no reversal unless the error seriously prejudiced the plaintiff's case . . . it is not the function of an appellate court to nit-pick jury instructions to death."  . . . A jury verdict . . . represents a good deal of work on the part of a good many people and the instructions undergirding that collective efforts should not succumb lightly to a semantic fencing."  (JA 583) (internal citations omitted).  That is true here.

### 3.    Comparative Negligence.

Plaintiff objects to the Court's charge on comparative negligence citing cases from other jurisdictions regarding comparative negligence in a professional negligence case.  Here, the jury verdict form instructed the jury that if they did not find the defendant negligent to immediately go to question 5, which completely bypassed the issues of proximate cause and comparative negligence (JA 554, 555).  The jury did not find the defendants negligent; therefore, the jury never deliberated on the issue of comparative negligence.

Even if the jury had found the Plaintiff to be negligent, there was ample testimony upon which a jury might reach a conclusion that the Plaintiff was negligent in his own right: (1) Plaintiff claimed that if he had known other buy backs, he would have never purchased the property, yet Defendant proved Plaintiff was aware that buybacks had been offered to other individuals. (See discussion supra. at 8.); (2) Plaintiff claimed that if he had known LGD did not own the property, he would have walked away. Yet Defendant proved Plaintiff informed both orally and in writing that LGD did not own the property. (See discussion supra. at 25.); (3) Plaintiff claims the appraisals were one of the most important documents to which he read for at least one half hour, yet the appraisals contained the same information; and (4) Despite being a sophisticated investor, Plaintiff never asked LGD for any information whatsoever. (See discussion supra. at 8.)

Thus, there was more than sufficient information for the jury to find RFT negligent; however, as the jury did not find Powell or PAS negligent, this issue is moot.

## III. RFT'S CLAIMS AGAINST ATTORNEYS ARE BARRED BY RES JUDICATA.

This court reviews a district court's grant of a motion to dismiss *de novo*. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). To prevail, Plaintiff must "state a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (emphasis

35

added and internal quotation marks omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Appellant RFT completely misconstrues the application of issue preclusion to this case. Issue preclusion is not limited to the exact claims asserted in a prior action, but extends to all claims that were asserted or could have been asserted.

South Carolina state courts have held that unlike collateral estoppel, the doctrine of *res judicata* precludes not only the relitigation of issues that were actually decided but also issues **which could have been presented for determination**. *Mackey v. Frazier*, 234 S.C. 81, 106 S.E.2d 895 (1959) (emphasis added). Under South Carolina law, the following elements must be shown to make out a plea of res judicata:

> (1) The parties must be the same or their privies; (2) The subject matter must be the same; and (3) While generally the precise point must be ruled, yet where the parties are the same or in privity, the judgment is an absolute bar not only of what was decided but what might have been decided.

*Id*. at 86, 106 S.E.2d at 899.

RFT has sued Attorneys for state law claims of violation of the South Carolina Uniform Securities Act, Conspiracy to Defraud and Violation of the SCUTPA. The claims pursuant to the South Carolina Uniform Securities Act and the SCUTPA are duplicative of the causes of action RFT pursued in its state court

36

suit. Both claims were dismissed on directed verdict at the conclusion of testimony.[11] Although the RFT did not bring a conspiracy claim in its state court suit, there is nothing that would have prohibited it from bringing that claim in the state court action, and accordingly, it is also barred by *res judicata*.[12]

With regard to RFT's claims which have been litigated, it is generally recognized that a dismissal with prejudice indicates adjudication on the merits and precludes subsequent litigation to the same extent as if the action had been tried to a final adjudication. *Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Nunnery v. Brantley Constr. Co.*, 289 S.C. 205, 345 S.E.2d 740 (Ct.App.1986). Where an action has been dismissed with prejudice, the judgment operates in subsequent litigation to the same extent as if the action had been tried to a final adjudication. *Id.; see Collins v. Sigmon,* 299 S.C. 464, 467, 385 S.E.2d 835, 837 (1989) (applying this principle to provide guidance to the trial court on remand regarding causes of action identical to those dismissed in a prior federal case pursuant to Rule 41(b), FRCP, but adding a "dismissal of a case

---

[11] Dismissal of the SCUPTA was affirmed, although on grounds other than those held by the trial court. *RFT Management Co., L.L.C. v. Tinsley & Adams L.L.P.,* 399 S.C. 322, 732 S.E.2d 166 (2012).

[12] Although RFT now alleges all of the Appellees conspired against it, it was free at any time to assert that claim against any single defendant. South Carolina courts have consistently applied the rule that one who asserts a cause of action arising out of a joint tort may, at his election, assert it against one or more or all of the joint tortfeasors. *Insurance Financial Services, Inc. v. South Carolina Ins. Co*., 275 S.C. 155, 160, 268 S.E.2d 113, 116 (1980).

'without prejudice means that the plaintiff can reassert the same cause(s) of action by curing the defects that led to dismissal' ").

Appellant RFT's reliance on *Plott v. Justin Enterprises*, 374 S.C. 504, 511, 649 S.E.2d 92, 95 (Ct. App. 2007) is misplaced.  The *Plott* court held that "*res judicata* requires three elements: 1) a final, valid judgment on the merits; 2) identity of parties; and 3) the second action must involve matters properly included in the first suit." *Id*. at 511. *Res judicata* did not apply in *Plott* because the second suit was based on a different claim, not an unraised cause of action.

> Although res judicata may apply even though the plaintiff in the first suit proceeded under a different legal theory, "where the second suit is upon a different claim, the former judgment is conclusive only as to those issues actually determined." *Id.*

The *Plott* court is clear, "*Res judicata* bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties."  Under *res judicata*, "[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit."  *Plott* at 511, 649 S.E.2d 92, 95 (Ct. App. 2007)

Both the state court and federal action arise out of the same transaction and occurrence.  RFT could have pled and litigated its state court causes of action in the now concluded state court case.  Judge Floyd correctly dismissed these claims.

38

RFT has already litigated and lost its claims for violation South Carolina Uniform Securities Act ("SCUSA") and the SCUTPA in state court. The state trial judge dismissed these claims at the conclusion of the Attorneys case. The state court dismissed RFT's state securities claim on the basis that the case did not involve the sale of a security. The South Carolina Supreme Court found it unnecessary to address whether or not the transaction involved the sale of a security in light of the jury's favorable verdict for the Attorneys on the malpractice claim holding as follows:

> Even assuming, without deciding, that the transaction qualified as a security, the securities claim was based on the same factual allegations that were ultimately rejected by the jury when it returned a verdict in favor of Law Firm on the legal malpractice claim. In addition, RFT absolved Law Firm of any potential liability resulting from an allegation of aiding and abetting a securities violation when RFT signed the retainer agreement with Law Firm that expressly limited the scope of its representation. In that agreement, RFT acknowledged that it was retaining Law Firm to close the transaction, prepare a deed of conveyance, and perform ministerial acts associated with the closing. RFT further acknowledged that it had not retained Law Firm to negotiate the contract and that it was not relying on Law Firm to provide substantive advice about the transaction. Consequently, there could be no liability, so we find no error in the granting of a directed verdict on this claim.

*RFT Management Co., L.L.C. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 732 S.E.2d 166 (2012).

The state trial court dismissed the Appellant RFT's SCUTPA claim on the basis that the SCUTPA did not apply to the legal profession. The South Carolina

Supreme Court disagreed, but upheld the trial court's dismissal of the claim
stating:

> Despite the trial court's error in finding the UTPA is not available
> against the legal profession, RFT has shown no reversible error in this
> regard. Because RFT alleged the same facts for its UTPA claim as in
> the legal malpractice claim, i.e., the deceptive acts of Law Firm,
> which the jury has already rejected, RFT has not shown it could have
> established all of the necessary elements of this claim. *Cf. Hennes v.
> Shaw,* 397 S.C. 391, 725 S.E.2d 501 (Ct.App.2012) (holding even if
> the circuit court erred in directing a verdict on the plaintiff's UTPA
> claim based on the regulated industries exemption in the UTPA, the
> plaintiff failed to demonstrate sufficient evidence on all of the
> elements of the claim, in particular, the plaintiff failed to demonstrate
> the defendant's actions adversely affected the public interest; thus, the
> circuit court's grant of a directed verdict on this claim was affirmed).
>
> *RFT Management Co., L.L.C. v. Tinsley & Adams L.L.P.,* 732 S.E.2d
> 166, 174 -175 (2012)

Again, the South Carolina Supreme Court concluded the Appellant RFT litigated
and failed to establish the elements of a SCUTPA claim.

In *Resolute Ins. Co. v. State of N.C.,* 397 F.2d 586, 589 (4th Cir. 1968), this
Court, when faced with a similar attempt to undo in federal court what had been
previously litigated and lost in state court, stated as follows:

> The doctrine of *res judicata* is applied in federal courts with respect to
> matters previously adjudicated in a state court of competent
> jurisdiction. While a federal court may entertain a collateral attack on
> a state court judgment which is alleged to have been procured through
> fraud, deception, accident, or mistake, there is no basis in the instant
> case for such an attack . . . . This case is a thinly veiled attempt to
> thwart the process of dispensing justice by relitigating matters which
> have been decided in a court of competent jurisdiction.

*Id*. at 589

RFT contends that since the South Carolina Supreme Court affirmed the lower court on other grounds, somehow RFT "won." "*Res judicata* is a rule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and, as to them, constitutes an absolute bar to a subsequent action." *In re Crews,* 389 S.C. 322, 698 S.E.2d 785, 794 (S.C.2010). *Res judicata's* fundamental purpose is "to ensure that no one should be twice sued for the same cause of action." *Judy v. Judy,* 393 S.C. 160, 712 S.E.2d 408, 414 (S.C.2011) (internal citations omitted). As the South Carolina Supreme Court observed, "*res judicata* is the branch of the law that defines the effect a valid judgment may have on subsequent litigation between the same parties and their privies. *Res judicata* ends litigation, promotes judicial economy and avoids the harassment of relitigation of the same issues." *Plum Creek Dev. Co., Inc., v. City of Conway,* 334 S.C. 30, 512 S.E.2d 106, 108 (S.C.1999). "A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). Accordingly, RFT's claims are barred by *res judicata*.

## IV.    THERE IS NO AIDER AND ABETTOR LIABILITY UNDER THE FEDERAL SECURITIES ACT OR THE INTERSTATE LAND SALES ACT.

## A.    SECURITIES ACT:

RFT in furtherance of its claims against Attorneys for violation of the Securities Act of 1934, 15 U.S.C.A. Section 78(j) and Rule 10b-5, 17 C.F.R. Section 240.10b-5 alleges as follows:

> 80.  Defendants Adams, Tinsley & Adams, Powell and PAS
>      knowingly aided and abetted the aforesaid violations and are
>      therefore liable jointly and severally for all damages caused by
>      LGD's violations.
>      (JA 24)

In response to Attorney's initial motion to dismiss the Appellant RFT's claims under the Federal Securities Act, this court stated as follows:

> The Court is concerned that the federal securities claim fails to state a
> cognizable cause of action. This concern arises from the United States
> Supreme Court's holding in *Central Bank of Denver, N.A. v. First*
> *Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994).
> (JA 63)

The trial court then denied the Attorney's initial motion to dismiss as to this cause of action with leave to refile on the basis that there is no aider and abettor liability under the Federal Securities Act.  As noted by the trial court, the Supreme Court in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164 (1994) has held that because the text of § 10(b) does not prohibit aiding and abetting, a private plaintiff may not maintain an aiding and abetting suit under § 10(b).  While RFT has alleged direct violation of the act by

42

other parties, its allegations as to the Attorneys and appraisers is limited to aider and abettor liability and thus failed as a matter of law.

As noted by the Fourth Circuit in *U.S. v. Bryan,* 58 F.3d 933, 945 (4th Cir. 1995):

> For at least two decades, however, the Supreme Court has repeatedly warned against expanding the concept of fraud in the securities context beyond what the words of the Act reasonably will bear. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, ——, 114 S.Ct. 1439, 1446, 128 L.Ed.2d 119 (1994) ("With respect ... to ... the scope of conduct prohibited by § 10(b), the text of the statute controls our decision."); *Chiarella,* 445 U.S. at 234, 100 S.Ct. at 1118 ("As we have emphasized before, the 1934 Act cannot be read ' "more broadly than its language and the statutory scheme reasonably permit." ' " (citation omitted)).

*Id* at 945.

*Central Bank* negates any claim for aider and abettor liability under the Federal Securities Act.

## B.    INTERSTATE LAND SALES ACT:

Neither the Fourth Circuit nor the South Carolina District Courts have recognized aider and abettor liability within the context of the Interstate Land Sales Act ("ILSA"). The few courts that have recognized aider and abettor liability under ILSA patterned that extension of liability on the aider and abettor liability under the Federal Securities Act. No courts have recognized aider and abettor liability under the ILSA since aider and abettor liability under the Federal Securities Act has been abolished.

43

The trial court correctly held that there is no cause of action for aider and abettor liability under the ILSA in this district or in the Fourth Circuit. Attorneys are not alleged to be either developers or agents, but rather aiders and abettors. A few district courts outside this circuit have recognized aider and abettor liability under the ILSA. There have been no cases extending liability to aiders and abettors since the Supreme Court struck down aider and abettor liability in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994).

The Fourth Circuit, prior to the *Central Bank of Denver* case ruled upon the scope of liability under the ILSA in the case of *Kemp v. Peterson*, 940 F.2d 110 (4th Cir. 1991). In Kemp, the court concluded that the terms developer and agent included officers, directors, and participating planners may be held individually liable for violations of the Act, notwithstanding the absence of a clause in the Act establishing liability for "controlling stockholders, officers and directors. The court however did not characterize this as aider and abettor liability, but merely broadened the definition of who constituted a developer or agent.

This case was addressed by the District Court in *Gibbes v. Rose Hill Plantation Development Co.*, 794 F.Supp. 1327 (D.S.C. 1992) which concluded the ILSA applies only to developers and their agents, unlike the Federal Securities Acts which apply to "any person." *Bartholomew v. Northampton Nat'l Bank of*

*Easton, Pennsylvania,* 584 F.2d 1288, 1293–1294 (3rd Cir.1978). While giving

deference to the Fourth Circuit opinion in *Kemp v. Peterson,* 940 F.2d 110, 113

(4th Cir. 1991), the court noted that the ILSA causes of action are still limited to

defendants who are involved in the sales process. *Citing, Hammar v. Cost Control*

*Marketing and Sales Management, Inc.,* 757 F.Supp. 698, 706 (W.D. Va. 1990).

The court held the determining factor to be whether each defendant participated in

sales or could be considered as a controlling person in an organization that

participated in sales.

RFT's argument that Attorneys were "agents" for purposes of §1701(6) of

the ILSA ignores the very language from the statute it quotes since attorneys

rendering legal services are specifically excluded from the definition of agent.

Appellant has pled a claim for aider and abettor liability that does not exist.

Even if there were aider and abettor liability under the ILSA, these claims

are barred by *res judicata*.[13] In enacting the ILSA, Congress vested concurrent

jurisdiction in the state and federal courts.

---

[13] Federal law governing res judicata would apply to federal claims. Under the
doctrine of "claim preclusion," a prior judgment bars the relitigation of claims that
were raised or could have been raised in the prior litigation, but only when
three elements are satisfied: (1) the prior judgment was final and on the merits, and
rendered by a court of competent jurisdiction in accordance with the requirements
of due process; (2) the parties are identical, or in privity, in the two actions; and,
(3) the claims in the second matter are based upon the same cause of action
involved in the earlier proceeding. *Pittston Co. v. U.S.,* 199 F.3d 694 (4th Cir.
1999).

The district courts of the United States, the United States courts of any territory, and the United States District Court for the District of Columbia shall have jurisdiction of offenses and violations under this chapter and under the rules and regulations prescribed by the Secretary pursuant thereto, and concurrent with State courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter.

15 U.S.C.A. § 1719.

RFT could have included any claim it may have had against Attorneys under the ILSA in the suit he filed and tried to conclusion in state court arising out of the exact same facts. RFT chose state court as its forum and chose not to include a cause of action for violation of the ILSA. RFT now attempts a "second bite at the apple" with regard to Attorneys by attempting to bring this claim in a separate federal action. This is precisely the piecemeal attempts at recovery that *res judicata* prohibits.

## V.   RFT'S UNTILIMELY MOTION TO AMEND HIS COMPLAINT WAS PROPERLY DENIED.

Under Federal Rule of Civil Procedure 15(a)(2), the "'grant or denial of an opportunity to amend is within the discretion of the district court.'" *Scott v. Family Dollar Stores, Inc.,* 733 F.3d 105, 121 (4th Cir.2013) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). *Drager v. PLIVA USA, Inc.* 741 F.3d 470, 474 (4 Cir. 2014).

Once a scheduling order's deadline for amendment of the pleadings has passed, to amend a moving party first must satisfy the good cause standard of

Fed.R.Civ.P. 16(b)[14]. If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. *Dilmar Oil Co. Inc., v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D.S.C.1997) *Morgan v. Self Regional Healthcare*, 2010 WL 5019974, 6 (D.S.C. 2010).

"'Good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts.... In other words, this Court may 'modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension.'" *Morgan v. Self Regional Healthcare*, 2010 WL 5019974, 6 (D.S.C.) (D.S.C. 2010). *See also*, *Montgomery v. Anne Arundel County*, Nos. 05-1267, 05-1314, 2006 WL 1194308, at *5 (4th Cir. 2006) ("Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party.").

RFT never moved to amend the scheduling order in this case. Instead it filed a motion to amend the complaint (JA 69) six weeks after the deadline to amend had passed. At the point RFT first filed suit in federal court, he had litigated

---

[14]A schedule may be modified only for good cause and with the judge's consent. Federal Rules of Civil Procedure Rule 16(b)(4).

through trial the facts related to the underlying transaction in state court. RFT alleges direct liability against several defendants under the Federal Securities Act (JA 23) but limited its allegations as to the Attorneys and appraisers to aider and abettor liability. RFT's proposed amendment only changes aider and abettor liability to direct liability without alleging any new or different facts supporting the new claim. RFT does not even attempt to argue that it has discovered new facts or that any of the underlying facts are different than they were when the claim was litigated in state court.

RFT first sued Attorneys October 20, 2008, alleging securities violations under state law. RFT engaged in full discovery with the Attorneys for almost two years leading up to a week-long trial in the state case.

Our courts require that to show good cause, a party must show that scheduling deadlines cannot be met despite that party's diligent efforts. RFT has made no showing of diligent effort, or any effort, to meet the scheduling order deadlines. If RFT reasonably believed it had a viable claim for a direct violation, it would have been aware of it three years ago. The trial court properly denied RFT's untimely motion to amend. *See Morgan v. Self Regional Healthcare,* 2010 WL 5019974, 7 (D.S.C. 2010) (The plaintiff has failed to show that the scheduling deadlines could not be met despite his diligent efforts. Accordingly, the good cause standard has not been met, and the motion to amend is denied.) *Taylor v.*

48

*Knoxville Trucks, Inc.,* 2010 WL 3951505, 4 (D.S.C. 2010) (Bank's Motion to Dismiss or for Judgment on the Pleadings is granted where answer indicated defense of failure to state a claim and Plaintiff failed to move to amend within the time limits of the scheduling order.)

In denying RFT's motion to amend, the trial court correctly concluded as follows:

> RFT states that "prior to the issuance of the Court's May 24, 2011 order, there had not been even the suggestion of a defense based upon the availability of aider and abettor liability under Rule 10b-5." (Dkt. No. 128 at 1–2.) The court notes that it is not the responsibility of the court or the opposing parties to notify a plaintiff as to deficiencies in the complaint. That RFT only discovered that it wanted to amend its pleading after an opposing party moved to dismiss the allegations contained in that pleading is not a good cause justifying a grant of leave to amend.

JA 104.

This court is to review the district court's denial of a motion to amend the complaint for abuse of discretion. *See S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.,* 318 F.3d 592, 595 (4th Cir. 2003); *Laber v. Harvey,* 438 F.3d 404, 428 (4th Cir. 2006); *Sloan v. CSX Transp., Inc.,* 616 F.3d 380, 388 (4th Cir. 2010). *Wilkins v. Montgomery*, 751 F.3d 214, 220 (4th Cir. 2014). There is nothing in the record to suggest the trial court abused its discretion in denying untimely motion to amend.

## CONCLUSION

As Appellee's have demonstrated, there is nothing in this record that requires reversal. Accordingly, Appellee's respectfully submit this Court should issue its order: (1) Affirming Judge Lewis in her decision to deny Appellant's Motion for Judgment As A Matter of Law and Motion for a New Trial, as well as affirming the decisions of Judge Floyd and Judge Cain in granting Appellees' Motions to Dismiss, and denying Appellant's belated Motion to Amend Its Complaint.

Respectfully submitted,

s/ William A. Coates

William A. Coates, Fed. ID No. 183
Carroll H. Roe, Jr.
ROE CASSIDY COATES & PRICE, P.A.
Post Office Box 10529
Greenville, SC 29603
864-349-2600
wac@roecassidy.com
proe@roecassidy.com
***Counsel for Defendants-Appellees***
***John D. Powell and Professional Appraisal***
***Service, Inc.***

Matthew H. Henrikson
Henrikson Law Firm, LLC
Post Office Box 26554
Greenville, SC 29616
864-672-7106
mhenrikson@henriksonlaw.com

Amy M. Snyder
Clarkson, Walsh, Terrell & Coulter, P.A.
Post Office Box 6728
Greenville, SC 29606
864- 232-4400
asnyder@clarksonwalsh.com
***Counsel for Defendants-Appellees Tinsley
& Adams, LLP and Welborn D. Adams***

Greenville, South Carolina

October 31, 2014

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.   This brief complies with the Type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

**The word count of this brief is 12,837.**

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

**This brief has been prepared in a proportionally spaced typeface using:**

**Microsoft Word, Times New Roman, 14 point font.**


s/ William A. Coates
William A. Coates

Greenville, South Carolina

October 31, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I filed the foregoing Response Brief of Appellees with the Clerk of Court via electronically and federal express, and will send notice of such filing to the following registered CM/ECF user:

        Harry A. Swagart, III
        Harry A. Swagart, III, P.C.
        P.O. Box 787
        Columbia, SC 29202
        ***Attorneys for Plaintiff***

                s/ William A. Coates
                William A. Coates

Greenville, South Carolina

October 31, 2014

# ADDENDUM A

**F.R.C.P. 15 Amended and Supplemental Pleadings**

**(a) Amendments Before Trial.**

**(2)** ***Other Amendments.*** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

**F.R.C.P. 16  Pretrial Conferences; Scheduling; Management**
**(b) Scheduling.**

**(4)** ***Modifying a Schedule.*** A schedule may be modified only for good cause and with the judge's consent.

**Interstate Land Sales Act 15 U.S.C.A. § 1701**
 For the purposes of this chapter, the term--
**(6)** "agent" means any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision; but shall not include an attorney at law whose representation of another person consists solely of rendering legal services;

**Federal Securities Act 15 U.S.C. § 78j.**

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe.

**17 CFR § 240.10b–5**

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

 (a)  To employ any device, scheme, or artifice to defraud,

 (b)  To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c)  To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.